# In the
# United States Court of Appeals
## For the Seventh Circuit

No. 05-3105

HAROLD CROUCH,

*Plaintiff-Appellant,*

*v.*

WHIRLPOOL CORPORATION,

*Defendant-Appellee.*

Appeal from the United States District Court
for the Southern District of Indiana, Evansville Division.
No. 04 C 10—**Richard L. Young**, *Judge.*

ARGUED FEBRUARY 7, 2006—DECIDED APRIL 20, 2006

Before BAUER, RIPPLE, and WOOD, *Circuit Judges.*

BAUER, *Circuit Judge.* Whirlpool Corporation (Whirlpool) terminated Harold Crouch after determining that he falsely applied for a leave of absence. Crouch sued Whirlpool for various violations of the Family and Medical Leave Act (FMLA) and Employee Retirement Income Security Act (ERISA). The district court granted summary judgment for Whirlpool, finding in relevant part that its honest suspicion of Crouch's misuse of FMLA leave justified his termination. We affirm.

## I. Background

Crouch and his fiancée, Ruth Ann Antey, have been Whirlpool employees since 2000 and 1969, respectively. Whirlpool employees sign up for vacation time by submitting request forms. Crouch and Antey attempted to coordinate vacation time, but requests are granted based on seniority. Due to her high seniority, Antey requested and received vacation for the weeks of July 8, July 15, and September 23 in 2002, and the weeks of June 30 and July 7 in 2003. Crouch submitted requests for all the same periods, but, due to his low seniority, was granted his requested vacation time only for the week of June 30, 2003.

Crouch also requested disability leave, for which Whirlpool employees are eligible after ninety days of employment. To qualify for disability leave, a doctor must certify that the employee is disabled and unable to work. Under Whirlpool policy, an employee who qualifies and applies for disability leave automatically qualifies for FMLA leave. If the employee is granted both disability and FMLA leave, then both time periods run concurrently.

The dates Crouch requested for disability leave correspond to the dates for which he was denied, and Antey was granted, vacation time. For instance, after he was denied vacation for the weeks of July 8 and July 15, 2002, he requested and was granted disability leave from June 27 until July 21. Lisa Heard, the employee who handled the requests, granted Crouch's leave even though she received his completed "Accident & Sickness Claim Form" (green form) on July 12, long after the leave began. Again, after he was denied vacation for the week of July 7, 2003, Crouch requested disability leave from June 25 until July 15. Heard approved the leave on June 25, based on Crouch's "Request for Leave of Absence" form and a note from his doctor, Dr. Craig Haseman. Heard could not have received the green form before June 30, because Dr. Haseman completed

it on that day. Manager Debby Castrale testified that it was Whirlpool's general practice to grant leave based on a doctor's note certifying that the disability rendered the employee unable to work. Crouch was out of work from June 25 to July 15.

Crouch's supervisor noticed that the dates of his disability leave in 2003 were the same dates for which he had sought vacation. After Castrale was notified of the coincidence, she discovered that Crouch had gone on disability leave in 2002 at the same time of year, because of the same reason (a knee injured during yard work), and again following denied vacation requests. As a result, Whirlpool hired a private detective service, Dave Gainer Investigations (DGI), which videotaped Crouch doing forty-eight minutes of yard work on July 12.

Following review of the tape, Whirlpool decided that Crouch had engaged in activities inconsistent with his leave. After returning to work on July 16, he was suspended pending investigation of a possible violation of Shop Rule 1, which provides that falsification of any company forms constitutes just cause for termination. At a hearing on July 21, he stated no reason why he should not be fired and admitted vacationing in Las Vegas during the leave. Whirlpool then terminated him for falsely applying for a leave of absence in violation of Shop Rule 1.

Crouch sued Whirlpool, claiming violations of the FMLA and ERISA. The district court granted summary judgment for Whirlpool on Crouch's claim that it violated his substantive FMLA rights by not restoring him to his prior position upon return from leave. Crouch appealed.

## II. Discussion

Crouch raises only one argument on appeal. He claims that the district court erred in granting summary judgment for Whirlpool because a genuine issue of material fact

existed regarding the date that Whirlpool approved his leave and, therefore, regarding the sincerity of its suspicion. Summary judgment is appropriate when the record reveals that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). We review the district court's grant of summary judgment *de novo. Ogborn v. United Food & Commercial Workers Union, Local No. 881*, 305 F.3d 763, 767 (7th Cir. 2002).

The FMLA grants eligible employees the right to take leave of up to twelve work weeks in any twelve-month period for a "serious health condition that makes the employee unable to perform the functions of the position." 29 U.S.C. § 2612(a)(1)(D). After return from a leave taken "for the intended purpose of the leave," the employee "shall be entitled . . . to be restored by the employer to the position of employment held by the employee when the leave commenced." 29 U.S.C. § 2614(a)(1). The Act makes it unlawful for an employer "to interfere with, restrain, or deny the exercise of or the attempt to exercise" this right. 29 U.S.C. § 2615(a)(1).

Whirlpool argues that its honest belief that Crouch had violated company policy by fraudulently obtaining disability leave justified his termination. Under the FMLA, an employee "has no greater right to reinstatement or to other benefits and conditions of employment than if the employee had been continuously employed during the FMLA leave period." 29 C.F.R. § 825.216(a). Whirlpool had, under its Shop Rule 1, just cause to terminate employees for falsification of personnel or any other company forms. Because Whirlpool could terminate Crouch for this violation while he was at work, it could also terminate him for it while he was on leave. *See Kohls v. Beverly Enter. Wis., Inc.*, 259 F.3d 799, 804-05 (7th Cir. 2001).

The FMLA return-to-work provision applies, in turn, only to employees on leave from work "for the intended purpose

of the leave," 29 U.S.C. § 2614(a)(1); an employer is under no obligation to reinstate an employee who misuses disability leave. Moreover, even an employer's honest suspicion that the employee was not using his medical leave for its intended purpose is enough to defeat the employee's substantive rights FMLA claim. *Kariotis v. Navistar Int'l Transp. Corp.*, 131 F.3d 672, 681 (7th Cir. 1997). At summary judgment, Whirlpool demonstrated its honest belief that Crouch was using his leave for vacation purposes instead of the intended purpose, recovery from an injured knee. Its suspicion resulted both from the coinciding dates of his vacation and disability leave requests and from the identical reasons he gave for the two disability leaves. The surveillance video provided by DGI confirmed the suspicion. The parties concede that Whirlpool's honest suspicion of misconduct defeats his claim at summary judgment if *Kariotis* controls the outcome.

Crouch nonetheless attempts to distinguish *Kariotis* on timing grounds. In *Kariotis*, the employer began an investigation of an employee after the employee's leave had been approved. 131 F.3d at 674. In this case, Crouch contends that Whirlpool had not yet approved his leave when Castrale noticed the coincidences and decided to hire DGI. This timing, he claims, undermines Whirlpool's honest suspicion because under the FMLA and company policy it could have required him to obtain a second medical opinion. *See* 29 U.S.C. § 2613(c) (providing that the employer, at its own expense, "may require" an employee to obtain a second opinion). It is undisputed that Whirlpool's suspicion arose between June 25, when Crouch's leave began, and "about the 26th or 27th" of June, when Castrale, after noticing the coincidences in his record, decided to hire DGI. If Whirlpool approved the leave before June 27, when its suspicion arose and its investigation commenced, then this case falls squarely within *Kariotis* and Whirlpool prevails.

Crouch requested leave from June 25 to July 15 on the basis of "a serious health condition" that rendered him "unable to perform the essential functions of" his job. On June 25, Crouch submitted a "Request for Leave of Absence" form along with a note from Dr. Haseman. Because Dr. Haseman only completed the green form on June 30, Whirlpool could not have received it before that day. Crouch notes that Whirlpool marked the "Request for Leave of Absence" form in a manner requiring him "to furnish medical certification of a serious health condition." According to Crouch, this language created a condition precedent, so that Whirlpool could not have approved his leave before it received the green form on June 30.

This argument, however, ignores the language that immediately follows on the form, providing that, "we may delay the commencement of your leave until the certification is submitted." This language enabled, but did not obligate, Whirlpool to delay the commencement of Crouch's leave until receipt of the green form. No evidence suggests that Whirlpool exercised this option to delay. To the contrary, because Crouch concedes that he was out of work from June 25 until July 15, it is self-evident that Whirlpool did not delay his leave.

Whirlpool presented evidence of its practice in granting disability leave. In her deposition, Castrale clarified that a doctor's note alone suffices for approval of leave:

> Q  If an individual—if an individual has the note—submits the note that says that I have a knee injury, I must be off for three weeks, is that enough to satisfy Whirlpool that the person needs to be off on disability leave?
>
> A  Yes. Generally, yes.
>
> Q  Okay. Also in that description I just gave, there is nothing in that note or nothing additional that should be in that note?

  A   As long as it's certified by the doctor, no.

The green form, she testified, served only to classify the leave period as paid. Because Crouch produced no evidence to contradict this account, we must accept that it was Whirlpool's general practice to approve disability leave based on a doctor's note and prior to receipt of the green form. *See Dvorak v. Mostardi Platt Assocs, Inc.*, 289 F.3d 479, 487-88 (7th Cir. 2002).

  Additionally, Whirlpool followed this practice in dealing with Crouch. Crouch does not dispute that Whirlpool approved at the outset his disability leave from June 27 until July 21, 2002, even though it did not receive the green form until July 12. Whirlpool adhered to the same practice in 2003. On June 25, Crouch submitted Dr. Haseman's note to Heard. She gave him the "Request for Leave of Absence" form, which he completed and submitted. In his deposition, Crouch admitted that his leave was approved that very day:

  Q   . . . had Lisa Heard informed you that you'd been approved for that leave on the 20—25th through the 15th?

  A   I would say she probably had, yes.

  Q   So at—at that time you—you pretty much knew that that—that it was approved?

  Q   Yes, I think so.

Again, his absence from work from June 25 until July 15 substantiates the June 25 approval of his leave. No genuine issue of material fact existed regarding the timing of Whirlpool's honest suspicion. *See Buie v. Quad/ Graphics, Inc.*, 366 F.3d 496, 509 (7th Cir. 2004) (holding that appellant presented insufficient evidence at summary judgment for a reasonable jury to find for him on his FMLA claim). As a result, Whirlpool's honest suspicion forecloses Crouch's FMLA claim, and summary judgment was proper. *See Kariotis*, 131 F.3d at 681.

### III.  Conclusion

For the foregoing reasons, the judgment of the district court is AFFIRMED.

A true Copy:

Teste:

_____
*Clerk of the United States Court of
Appeals for the Seventh Circuit*

USCA-02-C-0072—4-20-06