*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206
File Name: 07a0398p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

DONNA NOVAK,

*Plaintiff-Appellant,*

*v.*

No. 06-3036

METROHEALTH MEDICAL CENTER,

*Defendant-Appellee.*

>

Appeal from the United States District Court
for the Northern District of Ohio at Cleveland.
No. 04-02253—Ann Aldrich, District Judge.

Argued: November 1, 2006

Decided and Filed: September 28, 2007

Before: MERRITT and BATCHELDER, Circuit Judges; HEYBURN, Chief District Judge.[*]

---

## COUNSEL

**ARGUED:** Richard N. Selby, II, DWORKEN & BERNSTEIN CO., Painesville, Ohio, for Appellant. Jon M. Dileno, ZASHIN & RICH, Cleveland, Ohio, for Appellee. **ON BRIEF:** Richard N. Selby, II, DWORKEN & BERNSTEIN CO., Painesville, Ohio, for Appellant. Jon M. Dileno, ZASHIN & RICH, Cleveland, Ohio, Mark V. Webber, LITTLER MENDELSON, P.C., Cleveland, Ohio, for Appellee.

BATCHELDER, J., delivered the opinion of the court. MERRITT, J. (p. 10), delivered a separate opinion concurring in all sections except for Section II.A.2. HEYBURN, D. J. (p. 11), delivered a separate opinion concurring in the analysis and result.

---

## OPINION

---

ALICE M. BATCHELDER, Circuit Judge. Plaintiff Donna Novak ("Novak") appeals the district court's grant of summary judgment in favor of Defendant MetroHealth Medical Center ("MetroHealth") on her employment claims brought under the Family Medical Leave Act ("FMLA"), 29 U.S.C. § 2601 *et seq.* Novak argues that MetroHealth illegally denied her request for FMLA leave, claiming that she was entitled to FMLA leave because her back injury amounted

---

[*]The Honorable John G. Heyburn II, Chief United States District Judge for the Western District of Kentucky, sitting by designation.

to a serious health condition under the Act, and alternatively, that she was entitled to FMLA leave to care for her adult child who was suffering from postpartum depression. Because we conclude that these claims are not meritorious, we **AFFIRM** the district court's grant of summary judgment on Novak's claim of FMLA interference. But because we conclude that the district court should have remanded, rather than dismissed, Novak's state law claims, we **VACATE** and **REMAND** those claims to the district court with instructions to remand them to the state court from which they were removed.

## I. Background

Novak worked as a financial counselor for MetroHealth. For all relevant periods of her employment, MetroHealth maintained a no-fault attendance policy that assigned points to employees based on the employee's number of hours of unexcused absence. Approved absences such as FMLA leave were not included in the point total. MetroHealth calculated points on a rolling 12-month time period, and the attendance policy mandated progressive discipline, culminating in discharge when an employee accrued 112 points during a 12-month period.

Novak was terminated after she accrued 124 points between April 16, 2003 and April 16, 2004. The final absences resulting in her discharged occurred in late March 2004. During that period, Novak — pursuant to company policy — called MetroHealth each day she was absent to provide an explanation. On March 22, she reported that her daughter was having a baby. On March 23, Novak arrived late to work without providing an explanation. On March 24, she stated that she could not work because of "back pain." Similarly, on March 25, she reported that her "back was out." On Saturday March 27, Novak emailed her supervisor, explaining:

> I will need to be off on a[n] emergency [l]eave from Monday 3/29/04 til Thursday 4/1/04. My daughter is suffering from Post Partum [sic] Depression, and her son my grandchild who is only 5 days old has been readmitted to Metro[H]ealth and both are in need of my help and expertise NOW. I myself am not doing well[;] I have been having back problems again. I apologize for any inconviences [sic] this may cause.

Novak called on May 29, alleging that she was "sick," and on March 30 and 31, claiming that her daughter and grandson were ill.

Realizing that she had exceeded 112 points under MetroHealth's attendance policy, Novak sought FMLA leave for her March 2004 absences, and on March 30, 2004, she visited Dr. Ashok Patil ("Dr. Patil") regarding her lower back injury.[1] Prior to this time, she had been treated by Dr. Monica Wloszek ("Dr. Wloszek"), who was her physician of record with MetroHealth. Novak claims that MetroHealth's Manager Janet Whitney ("Whitney") told her that the FMLA certification form must be completed by the physician of record, Dr. Wloszek, rather than by Dr. Patil; however, Novak's deposition testimony and affidavit are entirely unclear regarding if or when Whitney told her that Dr. Wloszek must complete the form.

In early April 2004, Novak sent an FMLA certification form to Dr. Wloszek's office. Dr. Wloszek filled out the form and faxed it to MetroHealth, but because Dr. Wloszek had not examined Novak since October 2003, she omitted required information, such as a description of the medical facts and the likely duration of Novak's condition. After learning that the certification was incomplete, Novak contacted Dr. Wloszek's assistant, Erika Boda, and insisted that she complete the remainder of the form and fax it to MetroHealth. Novak told Boda what to write in the empty

---

[1]Novak used the diagnosis from her treatment with Dr. Patil to pursue a workers' compensation claim. In July 2004, she filed a workers' compensation claim for aggravation of a previous injury to her lower back, which was granted by the Bureau. These events form the basis of Novak's state law claim for workers' compensation retaliation.

spaces, and Boda complied with Novak's requests without obtaining Dr. Wloszek's permission. This was the second FMLA certification form submitted by Dr. Wloszek.

On April 9, 2004, MetroHealth held a "pre-discharge" meeting with Novak and her union representative to discuss whether her March 2004 absences qualified under the FMLA. Because MetroHealth questioned the authenticity of Dr. Wloszek's certification forms, it asked Novak to execute a release authorizing MetroHealth to contact Dr. Wloszek, and Novak complied with the request. After a brief discussion between the parties, MetroHealth decided to suspend the meeting until April 16, allowing Novak another week to submit additional certification forms. Whitney then contacted Dr. Wloszek to authenticate the previously submitted certification forms. Dr. Wloszek informed Whitney that she had not treated Novak since October 2003, lacked personal knowledge of Novak's March 2004 back problems, and did not complete the entire certification form.

A few days later, on April 12, Novak asked Dr. Wloszek to submit another certification form. Novak updated Dr. Wloszek on her condition, specifically recounting what Dr. Patil had told her during her March 30 examination, and Dr. Wloszek completed the form based on this secondhand information. This was the third certification form submitted by Dr. Wloszek. The next day Dr. Wloszek contacted Whitney to inform her that Novak had provided the secondhand information used to complete the third certification form.

During the suspension of the "pre-discharge" meeting, Novak submitted additional certification forms. One of these forms, completed by Dr. Dianne Schubeck, stated that Novak's eighteen-year-old daughter, Victoria Novak ("Victoria"), had given birth on March 22, 2004, suffered from postpartum depression, and was unable to care for her newborn child, Rafael. Dr. Schubeck also noted that Victoria's condition would last for a one-week period, and Novak needed to assist Victoria in caring for Rafael during this time. Novak also submitted a certification form completed by Dr. Mary Massie-Story, stating that Rafael was sick and Novak needed to assist with his care.

When MetroHealth reconvened its "pre-discharge" meeting on April 16, 2004, it determined that Novak's March 2004 absences did not qualify for FMLA leave and noted that she had provided "contradictory information" that did not qualify for leave under any policy. Because Novak's absences were not authorized under the FMLA, she was assessed points for all the missed work hours, and because the points now totaled 124, MetroHealth terminated her under the attendance policy.

On August 6, 2004, Novak filed suit against MetroHealth in the Cuyahoga County Court of Common Pleas alleging three counts of employment discrimination under Ohio law. Shortly thereafter, Novak amended her complaint, adding federal FMLA claims, and MetroHealth removed the case to federal court. The amended complaint alleged race discrimination under Ohio law, workers' compensation retaliation under Ohio law, FMLA interference, and FMLA retaliation. MetroHealth moved for summary judgment on all Novak's claims, and the district court granted the motion. Finding no basis for Novak's FMLA claims, the court dismissed them with prejudice, and the court declined to exercise supplemental jurisdiction over the state law claims, dismissing them without prejudice. Novak filed a timely notice of appeal.

## II. Analysis

On appeal Novak raises two arguments. First, she contends that the district court erred in granting summary judgment to MetroHealth on her claim of FMLA interference. Second, she

challenges the district court's dismissal of her state law claims, arguing that the court should have remanded those claims to state court.[2]

### A.     *FMLA Interference Claim*

Novak argues that the district court erred by granting summary judgment on her FMLA interference claim. We review *de novo* a district court's grant of summary judgment, using the same standard applied by the district court. *Williams v. Mehra*, 186 F.3d 685, 689 (6th Cir. 1999) (en banc). Summary judgment is proper if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). In reviewing a motion for summary judgment, we view the evidence, all facts, and any inferences in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). "To withstand summary judgment, the non-movant must show sufficient evidence to create a genuine issue of material fact." *Prebilich-Holland v. Gaylord Entm't Co.*, 297 F.3d 438, 442 (6th Cir. 2002) (citing *Klepper v. First Am. Bank*, 916 F.2d 337, 342 (6th Cir. 1990)). A mere scintilla of evidence is insufficient; "there must be evidence on which the jury could reasonably find for the [non-movant]." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). Entry of summary judgment is appropriate "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

The FMLA states that "[i]t shall be unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise any right provided [by this Act]." 29 U.S.C. § 2615(a)(1). More specifically, the FMLA prohibits an employer from counting FMLA leave against an employee under its "no fault" attendance policy. *Brenneman v. MedCentral Health Sys.*, 366 F.3d 412, 422 (6th Cir. 2004) (citing 29 C.F.R. § 825.220(c)). Employees believing they have been denied their FMLA rights may assert a cause of action for FMLA interference. *Killian v. Yorozu Auto. Tenn., Inc.*, 454 F.3d 549, 555 (6th Cir. 2006). To prevail on an FMLA interference claim, a plaintiff must establish that (1) she was an eligible employee as defined under the FMLA; (2) her employer was a covered employer as defined under the FMLA; (3) she was entitled to leave under the FMLA; (4) she gave the employer notice of her intention to take FMLA leave; and (5) her employer denied FMLA benefits to which she was entitled. *Walton v. Ford Motor Co.*, 424 F.3d 481, 485 (6th Cir. 2005) (citing *Cavin v. Honda of Am. Mfg., Inc.*, 346 F.3d 713, 719 (6th Cir. 2003)). The disputed factor in this case is whether Novak was entitled to leave under the FMLA. Novak presents two bases for her claim of entitlement to FMLA leave. First, she alleges that her back injury was an FMLA-qualifying condition and that her submitted certification forms sufficiently established the existence of her condition. Second, she contends that the FMLA authorizes care for her adult daughter during a temporary bout with postpartum depression. We will address these arguments in turn.

### 1.     *Back Injury as an FMLA-qualifying Condition*

The FMLA permits qualifying employees to take twelve weeks of unpaid leave each year if, among other things, the employee suffers from a "serious health condition that makes [her] unable to perform the functions of [her] position[.]" 29 U.S.C. § 2612(a)(1)(D). A "serious health condition" is defined as "an illness, injury, impairment, or physical or mental condition that involves (A) inpatient care in a hospital, hospice, or residential medical care facility or (B) continuing treatment by a health care provider." 29 U.S.C. § 2611(11). The employer may require an employee

---

[2]Novak does not raise the FMLA retaliation claim on appeal, nor does she raise the merits of her state law claims.

to provide a doctor's certification confirming the existence of a serious health condition. 29 U.S.C. § 2613(a). A doctor's certification of a serious health condition is sufficient if it states (1) the date on which the serious health condition began, (2) the probable duration of the condition, (3) the appropriate medical facts within the health care provider's knowledge, and (4) a statement that the employee is unable to perform her job duties. *Brenneman*, 366 F.3d at 422 (citing 29 U.S.C. § 2613(b)). While "the medical certification provided by the employee is presumptively valid if it contains the required information and is signed by the health care provider," the employer may overcome this presumption by showing that "the certification is invalid or inauthentic." *Harcourt v. Cincinnati Bell Tel. Co.*, 383 F. Supp. 2d 944, 955-56 (S.D. Ohio 2005) (citing 29 C.F.R. § 825.307(a)).

The district court found that the "suspicious and contradictory nature" of Novak's certification forms belied her contention that she suffered from a serious health condition. We agree that Novak's certification forms were insufficient to establish the existence of a serious health condition for purposes of FMLA. Dr. Wloszek's first certification form did not contain the date on which the serious health condition began, the probable duration of the condition, or the appropriate medical facts within the health care provider's knowledge; as a result, this certification was not sufficient under 29 U.S.C. § 2613(b), and MetroHealth was not required to credit it. Dr. Wloszek's second certification form was completed by her assistant at the insistence of Novak and was not authorized by Dr. Wloszek; because its contents were not authorized by a physician, MetroHealth satisfied its burden in demonstrating that the certification was not authentic. Finally, Dr. Wloszek's third certification form acknowledged that Dr. Patil, not Dr. Wloszek, had treated Novak in March 2004. Moreover, Dr. Wloszek informed MetroHealth that she had not examined Novak since October 2003, had no personal knowledge of Novak's current condition, and relied solely on what Novak relayed about Dr. Patil's assessment of her condition. Because MetroHealth knew Dr. Wloszek lacked personal knowledge of Novak's current condition, MetroHealth satisfied its burden of showing that the certification was unreliable, and it acted reasonably in refusing to grant FMLA leave on that basis.

Novak argues that MetroHealth should have advised her of the deficiencies in Dr. Wloszek's certification and allowed her a reasonable opportunity to correct them. We have indeed recognized that an employer who finds an employee's certification to be "incomplete" has a duty to inform the employee of the deficiency and provide the employee a "reasonable opportunity" to cure it. *Sorrell v. Rinker Materials Corp.*, 395 F.3d 332, 337 (6th Cir. 2005) (citing 29 C.F.R. § 825.305(d)); *Hoffman v. Professional Med Team*, 394 F.3d 414, 418 (6th Cir. 2005) (citing 29 C.F.R. § 825.305(d)). Moreover, we have previously recognized that other courts will impose this duty on employers when the FMLA certification is merely "inadequate," rather than "incomplete." *See Sorrell*, 395 F.3d at 338 (citing *Strickland v. Water Works & Sewer Bd.*, 239 F.3d 1199, 1209 n.12 (11th Cir. 2001); *Baldwin-Love v. Elec. Data Sys. Corp.*, 307 F. Supp. 2d 1222, 1234 (M.D. Ala. 2004)).

Assuming without deciding that this "duty" was triggered here, we find that MetroHealth clearly satisfied its duty to inform Novak that her certification was deficient and to provide her with a reasonable opportunity to cure the deficiency. At the first "pre-discharge" meeting, MetroHealth told Novak that Dr. Wloszek's certification was "insufficient" and obtained Novak's permission to contact Dr. Wloszek in order to authenticate it. *See* 29 C.F.R. § 825.307(a) ("[A] health care provider representing the employer may contact the employee's health care provider, with the employee's permission, for purposes of clarification and authenticity of the medical certification."). MetroHealth also granted Novak an extra week to obtain additional certifications. During the one-week extension, Novak submitted three more certifications — one from Dr. Schubeck regarding her daughter's postpartum depression, one from Dr. Massie-Story regarding her grandson's illness, and another from Dr. Wloszek regarding her back injury. Although the regulations do not define what constitutes a "reasonable opportunity" to cure certification deficiencies, we do not hesitate to hold

that MetroHealth satisfied its duty by seeking to authenticate Novak's previously submitted certification forms and by permitting Novak to submit three additional forms.

Novak next argues that if MetroHealth was not satisfied with the certification provided by Dr. Wloszek, it should have sought a second opinion before denying her leave, and having failed to do so, was precluded from thereafter challenging her certification. The FMLA states that an "employer [who] has reason to doubt the validity of the [employee's] certification . . . *may* require, at the expense of the employer, that the eligible employee obtain the opinion of a second health care provider[.]" 29 U.S.C. § 2613(c)(1) (emphasis added). We have previously recognized that the language in 29 U.S.C. § 2613(c)(1) is "merely permissive" and does not "impose[] an affirmative duty on an employer." *See Sorrell*, 395 F.3d at 337. Other circuits addressing this issue have similarly found that an employer that foregoes its right to a second opinion is not thereafter precluded from contesting the validity of an employee's serious health condition. *See Rhoads v. FDIC*, 257 F.3d 373, 386 (4th Cir. 2001) (noting that "the plain language of the [FMLA] does not suggest that an employer must pursue [a second opinion] *or* be forever foreclosed from challenging whether an employee suffered from a serious health condition"); *Stekloff v. St. John's Mercy Health Sys.*, 218 F.3d 858, 860 (8th Cir. 2000) (refusing to "read § 2613(c)(1) as requiring an employer to obtain a second opinion or else waive any future opportunity to contest the validity of the certification"). *But see Sims v. Alameda-Contra Costa Transit Dist.*, 2 F. Supp. 2d 1253, 1255 (N.D. Cal. 1998) (holding that "where the employer did not seek a subsequent medical opinion within a reasonable time period after the employee submitted his initial certification of a serious health condition, the employer may not now challenge . . . the validity of the initial medical certification submitted by the employee"). We continue to view the language of 29 U.S.C. § 2613(c)(1) as merely permissive; therefore an employer's failure to require a second certification does not preclude the employer from contesting the employee's certification. We find Novak's argument to the contrary meritless.

Finally, Novak contends that the district court erred in granting summary judgment to MetroHealth because there is a factual dispute as to whether MetroHealth's Manager Whitney told Novak that she must submit a certification form from Dr. Wloszek, rather than her new doctor, Dr. Patil. She further argues that it is fundamentally unfair for MetroHealth to insist that she obtain certification from Dr. Wlosezek, who was no longer her treating physician, and then reject that certification because Dr. Wloszek lacked personal knowledge of her recent back problems. We conclude that Novak has not created a genuine issue of material fact. In Novak's deposition, MetroHealth's counsel repeatedly asked her about Whitney's statement that the certification form must come from Dr. Wloszek. Novak's responses to these inquiries were wholly inadequate to create a genuine issue of fact. She evaded nearly every question, and in those few instances where she was responsive, her answers were virtually unintelligble and utterly contradictory. She first stated that Whitney told her of the certification requirement on April 9, but this date was after Dr. Wloszek had already submitted two certification forms on her behalf. Realizing the problematic timing of this date, Novak attempted to retreat but ultimately failed to give an alternative explanation. We therefore conclude that her deposition testimony failed to raise a genuine issue as to this fact.

In any event, this fact is not material to our resolution of this case. Novak never attempted to submit a certification form completed by Dr. Patil, nor does she indicate that Dr. Patil was willing to provide such certification. More troubling is the fact that Novak had never visited Dr. Patil before March 30, but she sought certification for FMLA leave beginning on March 22. Because March 30 is the first time Dr. Patil examined Novak, it is doubtful that he could have attested to her back condition on March 22. Furthermore, Novak did not complain to MetroHealth of back problems on March 30 or March 31; instead her stated reason for not reporting to work on those days was that she needed to care for her daughter and grandson. Therefore, even assuming that MetroHealth refused to accept certification from Dr. Patil, that fact is immaterial because Novak neither provided

certification from Dr. Patil nor indicated that he was willing to provide certification, and given the timing of Dr. Patil's treatment of her and her contradictory reasons for missing work, it is doubtful that he would have been able to provide adequate certification.

We find no error in the district court's conclusion that Novak was not entitled to FMLA leave because of a serious health condition.

### 2.       *Care for an Adult Child as an FMLA-qualifying Reason to Miss Work*

Novak alternatively sought FMLA leave to care for her 18-year-old daughter, Victoria, who was suffering from a short-term struggle with postpartum depression.[3]  The FMLA permits an employee to take leave from work to care for a parent, spouse, or child suffering from a serious health condition.  29 U.S.C. § 2612(a)(1)(C).  The FMLA authorizes leave to care for a child 18 years of age or older *only if* the child is suffering from a serious health condition *and* "incapable of self-care because of a mental or physical disability."  29 U.S.C. § 2611(12)(B).  Notably, Novak did not provide any evidence or medical certification that Victoria was in fact unable to care for herself; rather, the certification and Victoria's testimony all related to Victoria's difficulty in caring for her newborn child (i.e., Novak's grandchild).  But the FMLA does not entitle an employee to leave in order to care for a grandchild.  Novak nevertheless contends that her daughter's temporary bout with postpartum depression amounted to a "mental or physical disability," and thus she was entitled to FMLA leave to care for her.  We conclude that Victoria's postpartum depression did not constitute a "disability," as that term is defined under the FMLA, and therefore the FMLA did not authorize Novak's leave to care for her.

According to the FMLA regulations set forth by the Secretary of Labor, "physical or mental disability," as used in 29 U.S.C. § 2611(12)(B), means a "physical or mental impairment that substantially limits one or more of the major life activities of an individual," as these terms are defined by the regulations for the Americans with Disabilities Act ("ADA").  29 C.F.R. § 825.113(c)(2).  In other words, an employee may take FMLA leave to care for an adult child only if that child is "disabled" for purposes of the ADA.  We must therefore evaluate the adult child's condition under the ADA statute, regulations, and case law.  The issue of whether Victoria is disabled turns on whether her impairment — i.e., postpartum depression — substantially limited her in a major life activity.[4]  The ADA regulations provide that an individual is "substantially limit[ed]" in a major life activity if she is unable to perform or significantly restricted as to the condition, manner, or duration in which she performs a major life activity.  29 C.F.R. § 1630.2(j)(1).  The term "substantial" suggests a "considerable" or "large" limitation.  *Toyota Motor Mfg., Ky., Inc. v. Williams*, 534 U.S. 184, 196 (2002).  When determining whether an individual is substantially limited in performing a major life activity, courts should consider three factors:  (1) the nature and severity of the impairment; (2) the duration or expected duration of the impairment, and (3) the permanent or long-term impact of the impairment.  29 C.F.R. § 1630.2(j)(2); *see also MX Group, Inc. v. City of Covington*, 293 F.3d 326, 338 (6th Cir. 2002) (noting that an evaluation of "substantial

---

[3]In Victoria's affidavit, she states that her postpartum depression was preceded and partially caused by the post-traumatic stress syndrome she experienced after being held-up at gunpoint during the eighth month of her pregnancy.  Because Dr. Schubeck's certification form attests only to postpartum depression, and not post-traumatic stress syndrome, we will confine our inquiry accordingly.  Even if we were to consider Victoria's post-traumatic stress syndrome, it would not affect the outcome of this case because Victoria acknowledged that her post-traumatic stress syndrome, like her postpartum depression, was short lived, expressly stating that she was "better" within "a couple of weeks."

[4]Novak does not allege which "major life activity" was substantially limited by Victoria's postpartum depression.  We will assume for purposes of our analysis that Novak intends to argue that Victoria was substantially limited in the major life activity of caring for herself.  *See Moorer v. Baptist Mem'l Health Care Sys.*, 398 F.3d 469, 479 (6th Cir. 2005) (noting that major life activities include "functions such as caring for oneself") (quoting 29 C.F.R. § 1630.2(i)).

impairment" requires "an assessment of the severity and long-term impact of the impairment"). The EEOC's interpretive guidance for the ADA provides that "temporary, non-chronic impairments of short duration, with little or no long term or permanent impact, are usually not disabilities." 29 C.F.R. Pt. 1630, App § 1630.2(j). Similarly, the Supreme Court and this circuit have recognized that an impairment generally must be "permanent or long-term" to qualify as substantially limiting under the ADA. *See, e.g.*, *Toyota Motor*, 534 U.S. at 198 (holding that an impairment in performing manual tasks must be "permanent or long term" in order to qualify as a substantial limitation); *Hein v. All Am. Plywood Co.*, 232 F.3d 482, 487 (6th Cir. 2000) (noting that "short-term temporary restrictions on major life activities are generally not disabilities under the ADA").

We conclude, based on our evaluation of all the relevant factors, that Novak's daughter, Victoria, was not substantially limited in any major life activities — such as the activity of caring for oneself — and therefore was not disabled for purposes of the FMLA. First, Novak has not presented sufficient evidence for a jury to conclude that Victoria's impairment was severe. Other than Dr. Schubeck's certification form, the sum total of the evidence regarding Victoria's claimed disability is her testimony that she could not "follow the doctor's orders without some help" and that she was afraid she might "freak out and not know how to deal with a newborn." This nonspecific, nonexpert testimony is insufficient grounds upon which to find that Victoria's impairment was severe. Second, the undisputed facts clearly show that Victoria's condition lasted only a week or two. Dr. Schubeck's certification form recognized that Victoria's postpartum depression would last only for a one-week period, and Victoria's own affidavit acknowledged that she was "better" within "a couple weeks." Such a short-term restriction on a major life activity generally does not constitute a disability. *See Hein*, 232 F.3d at 487. Third, Novak has not produced any evidence indicating that Victoria's postpartum depression inflicted any permanent or long-term impact on her health. In fact, the record evidence is to the contrary, demonstrating that Victoria recovered in a short period of time, and giving no indication that she endured any long-term adverse effects. Because Novak has not established that her adult daughter suffered from a disability, the FMLA does not authorize Novak's leave to care for her.

Novak argues that we should follow the First Circuit's decision in *Navarro v. Pfizer Corp.*, 261 F.3d 90, 101 (1st Cir. 2001). Without expressing an opinion on the First Circuit's decision in that case, we note that even if we were to adopt the First Circuit's position in that case, it would not alter our conclusions here. The court in *Navarro* declared that the EEOC's interpretive guidance for the ADA — stating that temporary, non-chronic impairments of short duration are usually not disabilities, *see* 29 C.F.R. Pt. 1630, App § 1630.2(j) — "cannot be applied to the FMLA because it clashes with the underlying purposes of [that] statute." *Navarro*, 261 F.3d at 101. But the *Navarro* decision also recognized that "the duration of an impairment is *one of several factors* that should be considered in determining the existence of a disability under the FMLA." *Id.* at 103 (emphasis added). Our analysis considered all of the prescribed factors (i.e., severity, duration, and long-term impact) — not just the temporary, non-chronic nature of Victoria's impairment — and concluded, in light of all those factors, that Novak had not produced enough evidence for a jury to find that Victoria was disabled. Thus, even if we were to adopt *Navarro*'s invalidation of the EEOC's interpretive guidance — an issue that we need not and do not address — it would not compel a ruling in Novak's favor.

In short, we note that Congress, when enacting the FMLA, differentiated between children under the age of 18 and children 18 years of age or older in defining those persons for whose care an employee is entitled to take leave from work. That difference is defined in terms of "disability." *See* 29 U.S.C. § 2611(12) (defining "child" for purposes of FMLA leave as (1) a child "under 18 years of age" or (2) a child "18 years of age or older and incapable of self-care because of a mental or physical disability"); S. Rep. No. 103-3, at 22 (1993), *reprinted in* 1993 U.S.C.C.A.N. 3, 24 (recognizing that "in special circumstances, where a child has a mental or physical disability, a child's need for parental care may not end when he or she reaches 18 years of age"). Whatever

Congress's reasons for limiting FMLA leave for purposes of caring for one's child to minor children or adult children who are disabled, the limitation itself is clear. Here, Novak sought leave to care for Victoria — her non-disabled adult child — but it is clear, under the statutory system constructed by Congress, that Novak is not entitled to FMLA leave for such purposes. Accordingly, we find no error in the district court's conclusion that Novak was not entitled to FMLA leave.

## B.        *District Court's Dismissal of Novak's State Law Claims*

After dismissing Novak's federal FMLA claims, the district court declined to exercise supplemental jurisdiction over her state law claims. We review for abuse of discretion a district court's refusal to exercise supplemental jurisdiction. *Landefeld v. Marion Gen. Hosp., Inc.*, 994 F.2d 1178, 1182 (6th Cir. 1993). A district court may decline to exercise supplemental jurisdiction over state law claims if it has dismissed all claims over which it had original jurisdiction. 28 U.S.C. § 1367(c)(3). "When all federal claims are dismissed before trial, the balance of considerations usually will point to dismissing the state law claims, or remanding them to state court if the action was removed." *Musson Theatrical v. Federal Express Corp.*, 89 F.3d 1244, 1254-55 (6th Cir. 1996). Because the district court dismissed Novak's federal claims, the court could properly refuse to exercise supplemental jurisdiction over the pendant state law claims. In cases that have been removed to federal court, however, we have recognized that "when all federal claims have been dismissed before trial, the best course is to remand the state law claims to the state court from which the case was removed." *Thurman v. Daimler Chrysler, Inc.*, 397 F.3d 352, 359 (6th Cir. 2004). Because the district court should have remanded Novak's state law claims, rather than dismissing them, we vacate the dismissal of her state law claims so that those claims may be remanded to the state court from whence they came (i.e., the Cuyahoga County Court of Common Pleas).

## III.  Conclusion

For the foregoing reasons, we **AFFIRM** the district court's grant of summary judgment in favor of MetroHealth and the corresponding dismissal of Novak's FMLA claims. We **VACATE** the dismissal of Novak's state law claims and **REMAND** to the district court with instructions to remand those claims to the Cuyahoga County Court of Common Pleas.

—————————————

## CONCURRENCE

—————————————

MERRITT, Circuit Judge, concurring. I concur in all of the sections of Judge Batchelder's opinion, except for Section II.A.2, concerning the plaintiff's eligibility for medical leave for caring for her daughter. I agree with the analysis of the First Circuit in *Navarro v. Pfizer Corp.*, 261 F.3d 90 (1st Cir. 2001). I agree with the First Circuit's opinion on this subject, but I agree with Judge Batchelder that, even so, the plaintiff in the instant case does not meet the First Circuit standard. There is no showing that the depression of the plaintiff's daughter was of such duration or severity that it would allow the plaintiff medical leave for caring for her. The plaintiff made out a haphazard sort of case that does not show a serious medical emergency.

---------------------

## CONCURRENCE

---------------------

HEYBURN, Chief District Judge, concurring.  I concur in the analysis and result in Judge Batchelder's opinion, except that I do not express an opinion concerning the standard adopted in Section II.A.2. of that opinion.  Judge Batchelder adopts a standard whereby short-term restrictions on major life activities generally do not constitute a disability under the FMLA.  Judge Merritt would adopt the standard set forth in *Navarro v. Pfizer Corp.*, 261 F.3d 90 (1st Cir. 2001).  I find it unnecessary to take either side in order to resolve this case, because I conclude, as have my two fellow judges, that Novak has met neither standard.