*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

LC BULGER,

Plaintiff-Appellant,

v

DETROIT PUBLIC SCHOOLS COMMUNITY
DISTRICT,

Defendant-Appellee.

UNPUBLISHED
April 15, 2025
10:46 AM

No. 366447
Wayne Circuit Court
LC No. 22-011371-CZ

Before: MURRAY, P.J., and M. J. KELLY and N. P. HOOD, JJ.

PER CURIAM.

This appeal arises from defendant, the Detroit Public Schools Community District's, denial of plaintiff, LC Bulger's, application for a leave of absence under the Family Medical Leave Act (FMLA), 29 USC 2601, *et seq.*, and defendant's subsequent termination of Bulger's employment. The trial court denied Bulger's motion for summary disposition under MCR 2.116(C)(10) and instead granted summary disposition to defendant under MCR 2.116(I)(2). For the reasons stated in this opinion, we reverse in part and remand for further proceedings.

## I. BASIC FACTS

Bulger was employed as a "trainable aide" in defendant school district. He was assigned to the Charles Drew Transition Center, which offers a program for young adults with moderate to severe cognitive impairments. In March 2020, defendant closed the schools and initiated online instruction in response to the COVID-19 pandemic. In August 2020, defendant made plans to reopen the schools. Bulger, who was a member of an activist organization, By Any Means Necessary (BAMN), opposed the reopening plan as dangerous and unjust. Although Bulger was required to report to work on August 31, 2020, he did not appear for work on any day during the week of August 31, 2020 through September 4, 2020. He called in sick on some or all of these days.

The Charles Drew Transition Center was scheduled to reopen for students and aides on Tuesday, September 8, 2020. Bulger, however, did not attend work that day or any other day in September 2020. Instead, he and other BAMN members demonstrated outside the school, urging

-1-

parents not to allow their children to enter the building. On September 17, 2020, he submitted a request for medical leave under the FMLA. In support, he submitted a note signed by a physician which stated that he was totally incapacitated beginning on September 8, 2020, because of "migraines." Defendant's Human Resources department denied the request on the ground that it was not supported by sufficient medical information. On September 28, 2020, Bulger submitted a second note from his physician, which extended his leave request to October 27, 2020. On October 13, 2020, defendant terminated Bulger's employment on grounds of job abandonment.

Bulger filed a complaint alleging that defendant interfered with his rights under the FMLA and retaliated against him for exercising his rights.[1] He moved for summary disposition under MCR 2.116(C)(10), arguing that there was no genuine issue of material fact that defendant wrongfully rejected his FMLA leave request without allowing him the opportunity to correct any deficiency in his supportive information. Defendant filed a countermotion for summary disposition under MCR 2.116(C)(10) and (I)(2), arguing that Bulger was ineligible for FMLA leave because he did not work at least 1,250 hours in the 12-month period preceding his application for FMLA leave. Defendant also argued that Bulger's absenteeism from work was an illegal strike, not an excusable absence or protected activity. Additionally, defendant argued that Bulger's FMLA claim should be barred under the doctrine of unclean hands because his participation in the demonstration proved that he was not incapacitated by migraines during his absence. Bulger argued in response that he met the 1,250-hour minimum, but defendant erroneously failed to count the hours he worked at home during the COVID-19 closure from March 12, 2020 to May 5, 2020. The court granted summary disposition in defendant's favor. This appeal follows.

## II. SUMMARY DISPOSITION

## A. STANDARD OF REVIEW

Bulger argues that the trial court erred by granting summary disposition in favor of defendant. We review de novo a trial court's decision on a motion for summary disposition. *Barnard Mfg Co, Inc v Gates Performance Engineering*, *Inc*, 285 Mich App 362, 369; 775 NW2d 618 (2009). Summary disposition is appropriate under MCR 2.116(C)(10) if, "[e]xcept as to the amount of damages, there is no genuine issue as to any material fact, and the moving party is entitled to judgment or partial judgment as a matter of law." A genuine issue of material fact exists when the evidence presented "leave[s] open an issue upon which reasonable minds might differ." *Debano-Griffin v Lake Co*, 493 Mich 167, 175; 828 NW2d 634 (2013) (quotation marks and citation omitted).

---

[1] Bulger also filed a complaint alleging an unfair labor practice with the Michigan Employment Relations Commission (MERC), alleging that he had been wrongfully terminated in retaliation for exercising his rights under the Public Employment Relations Act (PERA), MCL 423.201 *et seq*. MERC, however, affirmed an administrative law judge's (ALJ) finding that Bulger had failed to demonstrate that defendant acted out of antiunion animus and dismissed his complaint.

B. ANALYSIS

1. ELIGIBILITY FOR FMLA

"Congress enacted the FMLA 'to balance the demands of the workplace with the needs of families, to promote the stability and economic security of families, and to promote national interests in preserving family integrity.' " *Milman v Fieger & Fieger, PC*, 58 F4th 860, 865 (CA 6, 2023),[2] quoting 29 USC 2601(b)(1)-(5). "The FMLA does so by conferring on eligible employees 'two interrelated, employee substantive rights': 'the . . . right to use a certain amount of leave for protected reasons, and . . . [the] right to return to . . . an equivalent job after using protected leave." *Milman*, 58 F4th at 865, quoting *Bachelder v Am W Airlines, Inc*, 259 F3d 1112, 1122 (CA 9, 2001) (alteration in original). Two types of claims exist under 29 USC 2615(a).

"The first, known as an entitlement or interference claim, arises when an employee is wrongfully denied a substantive entitlement—for example, the employee is denied leave to which she is entitled." *Milman*, 58 F4th at 866. "To prevail on an FMLA interference claim, a plaintiff must establish that (1) she was an eligible employee as defined under the FMLA; (2) her employer was a covered employer as defined under the FMLA; (3) she was entitled to leave under the FMLA; (4) she gave the employer notice of her intention to take FMLA leave; and (5) her employer denied FMLA benefits to which she was entitled." *Novak v MetroHealth Med Ctr*, 503 F3d 572, 577-578 (CA 6, 2007).

"The second type of claim, generally known as a retaliation or discrimination claim, arises when an employer takes an adverse employment action against the employee for exercising or attempting to exercise a right protected by the FMLA." *Milman*, 58 F4th at 866.

> To state a claim for retaliation for exercising (or attempting to exercise) FMLA rights, [the plaintiff] must establish that: (1) [he or she] was engaged in protected activity; (2) [the] employer knew [he or she] was engaged in the protected activity; (3) [the] employer took an adverse employment action against [him or her]; and (4) there was a causal connection between the protected activity and the adverse employment action. [*Id*. at 867.]

Depending on the circumstances, an employee might be ineligible for FMLA leave, and yet have a claim for retaliation if he or she engaged in protected activity such as inquiring about plans to apply for leave. *Id*. at 868-869. "[T]he scope of protected activity under the FMLA starts with the first step contemplated under the Act's procedures: a request made to the employer. That request, moreover, need not lead to entitlement in order to be protected." *Id*. at 871. Accordingly, Bulger's alleged ineligibility can negate an interference claim, but not a retaliation claim.

---

[2] With respect to issues of federal law, including the interpretation of federal statutes, this Court is bound by decisions of the United States Supreme Court, but not by decisions of any lower federal courts. *Dobronski v Transamerica Life Ins Co*, 347 Mich App 92, 102; 13 NW2d 92 (2023). The lower federal court decisions may be considered for their persuasive value. *Id*.

"[T]he FMLA limits *who* is eligible for FMLA leave: only those employees who worked for a covered employer for at least 12 months and have accumulated at least 1,250 hours of service with that employer in the previous 12 months." *Id*. at 865, citing 29 USC 2611(2)(A). The FMLA does not define the term "hours of service," but 29 USC 2611(2)(C) incorporates by reference the provision of the Fair Labor Standards Act (FLSA), 29 USC 207, for determining an employee's "maximum hours" and "regular rate." The Sixth Circuit in *Mutchler v Dunlap Mem Hosp*, 485 F3d 854, 857 (CA 6, 2007), explained how the FLSA principles are applied to FMLA eligibility:

> To be "eligible" under the FMLA, an employee must have been employed by the employer at issue for the preceding twelve months and must have put in at least 1,250 "hours of service" during that time. 29 U.S.C. § 2611(2)(A); 29 C.F.R. § 825.110(a). In calculating the "hours of service," the Act incorporates by reference the legal standards set forth in § 7 of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 207. 29 U.S.C. § 2611(2)(C). Yet, § 7 nowhere defines "hours of service." . . . Under § 7 of the FLSA, "regular rate" includes "all remuneration for employment paid to, or on behalf of, the employee," and expressly excludes several types of compensation not made for hours worked. 29 U.S.C. § 207(e); cf. *Minizza v Stone Container Corp*., 842 F 2d 1456, 1462 (CA 3, 1988) (finding compensation specifically excluded under § 207(e)(2) shares "the essential characteristic" of not being paid for "hours worked or services rendered").

Thus, Bulger's evidence that he received compensation during the remote schooling period does not necessarily prove that this time was made up of "hours worked or services rendered," because he might have been compensated for other reasons.

"In the event an employer does not maintain an accurate record of hours worked by an employee, . . . the employer has the burden of showing that the employee has not worked the requisite hours." 29 CFR 825.110(c)(3) (2023). The federal regulations state with respect to teachers:

> An employer must be able to clearly demonstrate, for example, that full-time teachers (see § 825.102 for definition) of an elementary or secondary school system, or institution of higher education, or other educational establishment or institution (who often work outside the classroom or at their homes) did not work 1,250 hours during the previous 12 months in order to claim that the teachers are not eligible for FMLA leave. [29 CFR 825.110(c)(3).]

A school district bears the burden of proving FMLA ineligibility. *Donnelly v Greenburgh Cent Sch Dist No 7*, 691 F3d 134, 142 (CA 2, 2012).

In this case, defendant failed to demonstrate the absence of a genuine issue of material fact regarding Bulger's eligibility. Defendant offered an affidavit from its agent averring that Bulger worked fewer than 1,250 hours in the year preceding his application for FMLA leave, whether that date is September 8, 2020, or September 17, 2020. Defendant also produced spreadsheets of Bulger's hours worked and the compensation he received. However, Bulger responded by submitting his own affidavit stating that he worked remotely during the period between March 12, 2020 and May 5, 2020, before defendant established a procedure for remotely working employees

to check in and check out. He stated that he attended meetings and helped to find ways for aides to work with remote and virtual instruction. Yet the period between March 12, 2020 and May 5, 2020, was not included in defendant's calculations. This evidence established a material dispute between the parties as to whether Bulger accrued actual hours worked during the building's closure. This conclusion does not preclude the possibility that defendant could demonstrate the absence of a material question of fact in light of this opinion's clarification of the applicable principles under the FMLA and FLSA.

Bulger and defendant also dispute whether the statement in 29 CFR 825.110(c)(3) regarding the inclusion of hours that teachers work at home applies to his job. Defendant contends that this statement does not apply to Bulger because he is not a teacher. Notably, the definition of "teacher" extends to employees "employed principally in an instructional capacity," including "special education assistants such as signers for the hearing impaired," but excludes from the definition "teacher assistants or aides who do not have as their principal function actual teaching or instructing." 29 CFR 825.102 (2023). It is not clear from the record whether Bulger's job duties are comparable to signing for students with impaired hearing or whether his principal function does not involve actual teaching or instructing. Under these circumstances, the trial court erred by granting summary disposition for defendant on this ground. Again, this does not preclude the possibility that defendant could demonstrate in a renewed summary disposition motion that Bulger fails to demonstrate a genuine issue of material fact regarding his hours of service and FMLA eligibility.

Next, Bulger argues that defendant is equitably estopped from asserting that he is ineligible because defendant would not have made a decision on his FMLA request if he had really been ineligible. "Equitable estoppel is not an independent cause of action, but instead a doctrine that may assist a party by precluding the opposing party from asserting or denying the existence of a particular fact." *Conagra, Inc v Farmers State Bank*, 237 Mich App 109, 140-141; 602 NW2d 390 (1999). Defendant has not provided a reason why it issued a decision on the FMLA request instead of rejecting it on eligibility grounds. Regardless, the record does not demonstrate that defendant's actions prejudiced him. See *Williamstown Twp v Sandalwood Ranch, LLC*, 325 Mich App 541, 553; 927 NW2d 262, 270 (2018) (stating that an element of the doctrine of equitable estoppel is that a party will be prejudiced by the other party's denial of the existence of facts). Notwithstanding defendant's actions in relation to the FMLA request, Bulger pursued relief from defendant's actions in both the instant lawsuit and in an unfair labor practice claim before MERC. Thus, he has availed himself of the opportunity to challenge defendant's assertion that he was ineligible.[3]

---

[3] Bulger argues that if he had been informed of his alleged ineligibility in September 2020, he would have been better able to refute defendant's evidence. However, it is premature to consider how defendant's delay in challenging Bulger's eligibility affects his ability to pursue this claim. This is an issue that can be pursued on remand.

## 2. WORK STOPPAGE

Next, Bulger argues that the trial court erred in accepting defendant's argument that his work stoppage constituted a strike under PERA. "A public employee shall not strike and a public school employer shall not institute a lockout." MCL 423.202. Under MCL 423.201(k),

> "Strike" means the concerted failure to report for duty, the willful absence from one's position, the stoppage of work, or the abstinence in whole or in part from the full, faithful, and proper performance of the duties of employment for the purpose of inducing, influencing, or coercing a change in employment conditions, compensation, or the rights, privileges, or obligations of employment. For employees of a public school employer, strike also includes an action described in this subdivision that is taken for the purpose of protesting or responding to an act alleged or determined to be an unfair labor practice committed by the public school employer

MCL 423.202a provides the procedures for responding to an illegal strike. The public school employer and superintendent must notify MERC of the strike and serve the bargaining representative with a copy of the notice. MCL 423.202a(1). MERC then conducts a hearing "to determine if conditions constituting a strike by 1 or more public school employees in violation of section 2 . . . exist." MCL 423.202a(3). A public school employee who is absent from work without permission during a strike "is presumed to have engaged in the strike on that date." MCL 423.202a(5). "A public school employee presumed to have engaged in a strike" may challenge the presumption via the procedure set forth in MCL 423.202a(6). Arguably, Bulger's demonstration and refusal to enter the building constituted "the willful absence from one's position, the stoppage of work, or the abstinence in whole or in part from . . . performance of the duties of employment for the purpose of inducing . . . a change in employment conditions, compensation, or the rights, privileges, or obligations of employment."

Bulger, however, argues that defendant cannot belatedly justify his termination or denial of FMLA leave on the ground that he was striking because defendant failed to initiate the remedial process under MCL 423.202a. He also argues that he was denied the opportunity to challenge the allegation under MCL 423.202a(6) and that the only penalty for striking is a deduction of salary under MCL 423.202a(7). However, defendant's claim that Bulger was striking was made as a response to his allegations that defendant wrongfully retaliated against him and wrongfully terminated him. The implied premise of Bulger's FMLA lawsuit and MERC action was that his failure to report to work on or after August 31, 2020, was protected activity and excusable absenteeism. Defendant responded that it was neither because it was a strike. Defendant thus defensively asserted a strike in response to Bulger's attempt to immunize himself from charges of absenteeism. It is not reasonable to preclude defendant from asserting this defense merely because it declined to pursue an unfair labor practice claim against Bulger.

Regardless, based upon the record, it is clear that the alleged strike activity was not a factor in the trial court's summary-disposition decision. Rather, the trial court found that defendant submitted evidence that Bulger did not work 1,250 hours in the year preceding his FMLA request, rendering him ineligible for FMLA leave. The court acknowledged that Bulger asserted that he worked outside of the school, but the court found that he failed to "provide the Court with any

-6-

legal basis to consider such work as hours towards FMLA eligibility." The court summarized defendant's evidence that Bulger engaged in "FMLA fraud," but it did not indicate if the fraud was also a basis for granting summary disposition in defendant's favor.

Nevertheless, if defendant had a legitimate basis for terminating Bulger's employment on grounds of job abandonment, and that job abandonment was not excusable because it was actually striking, Bulger's eligibility for FMLA leave would be irrelevant. Moreover, the issue of whether there was an illegal strike could also be relevant to Bulger's retaliation claim. Again, a retaliation claim does not require proof that the employee was eligible for FMLA leave. However, it requires proof that the employer's adverse employment decision was causally connected to the employee's application for FMLA leave. *Milman*, 58 F4th at 867. Here, defendant denies a causal connection between Bulger's termination and protected activity of any sort. Defendant maintains that Bulger's unauthorized absenteeism was not protected activity, but job abandonment or a strike. If defendant's argument is correct, there is no causal connection in support of a retaliation claim. Thus, if defendant can demonstrate that Bulger was striking at the start of the school year in fall 2020, there is an alternative ground to dismiss Bulger's interference claim, and a basis for dismissing his retaliation claim. On remand, if defendant proves that Bulger's work stoppage constituted an illegal strike under PERA, the trial court may dismiss Bulger's retaliation claim on that basis.

### 3. ALLEGED FMLA FRAUD

Bulger contends that the trial court substituted its own judgment of his medical condition in place of his physician's diagnosis and orders. We disagree. The FMLA provides that an eligible employee is entitled to 12 weeks of leave for "a serious health condition that makes the employee unable to perform the functions of the position of such employee." 29 USC 2612(a)(1)(D). Federal regulations define "serious health condition" as "an illness, injury, impairment or physical or mental condition that involves inpatient care . . . or continuing treatment by a health care provider . . . ." 29 CFR 825.113(a) (2023). The term "incapacity" is defined as "inability to work, attend school or perform other regular daily activities due to the serious health condition, treatment therefore, or recovery therefrom." 29 CFR 825.113(b). "If an employee submits a complete and sufficient certification signed by the health care provider, the employer may not request additional information from the health care provider." 29 CFR 825.307(a) (2023). "However, the employer may contact the health care provider for purposes of clarification and authentication of the medical certification . . . after the employer has given the employee an opportunity to cure any deficiencies as set forth in § 825.305(c)." *Id*. "An employer who has reason to doubt the validity of a medical certification may require the employee to obtain a second opinion at the employer's expense." 29 CFR 825.307(b)(1).

Under interpretation by the Sixth Circuit and other courts, "an employer who finds an employee's certification to be 'incomplete' has a duty to inform the employee of the deficiency and provide the employee a 'reasonable opportunity' to cure it." *Novak v MetroHealth Medical Ctr*, 503 F3d 572, 579 (CA 6, 2007) (citation omitted). In *Sorrell v Rinker Materials Corp*, 395 F3d 332, 338 (CA 6, 2005), the court approved the holding in several district court decisions "that an employer may not assert incompleteness of a medical certification as grounds for disciplining an employee where the employer never notified the employee of the problem or gave him an opportunity to cure it."

Defendant relies on *Crouch v Whirlpool Corp*, 447 F3d 984 (CA 7, 2006), in which the court held that an employer's honest belief that an employee obtained FMLA leave on fraudulent grounds did not violate the FMLA by terminating that employee. In *Crouch*, the defendant employer discovered that the plaintiff employee in 2003 and 2004 requested vacation time, was denied, and then requested FMLA leave for a knee injury. *Id.* at 985. The employer became suspicious and hired a private detective service, which videotaped the plaintiff performing yard work for 48 minutes during his leave. *Id.* When he returned to work, the plaintiff was terminated for falsely applying for a leave of absence. *Id.* The plaintiff sued the defendant for violating the FMLA by failing to restore his employment as required under 29 USC 2614(a)(1). *Crouch*, 447 F3d at 986. The Seventh Circuit cited 29 CFR 825.216(a) (2023), which provides that an employee "has no greater right to reinstatement or to other benefits and conditions of employment than if the employee had been continuously employed during the FMLA leave period." *Crouch*, 447 F3d 984 (quotation marks omitted). The return-to-work provision of the FMLA applies "only to employees on leave from work 'for the intended purpose of the leave,' 29 USC 2614(a)(1)[.]" *Crouch*, 447 F3d at 984. The court concluded that defendant's "honest belief that Crouch was using his leave for vacation purposes instead of the intended purpose" was supported by evidence that he twice requested FMLA leave for the same dates that he previously requested vacation leave, and that both FMLA leave requests related to recovery from an injured knee. *Id.* at 986. The defendant's "honest suspicion foreclose[d]" the plaintiff's FMLA claim and entitled the defendant to summary judgment. *Id.* at 988.

The circumstances of the instant case do not clearly fit the situation in which an employer denies an FMLA leave request on grounds of insufficient information for certification, and, in the meantime, the applicant engages in public conduct that appears inconsistent with the alleged incapacity. Bulger argues that this is a simple matter of insufficient certification, in which the employer's only recourse is to request more information or to refer him to a medical provider for a second opinion. Defendant argues on appeal that *Crouch* applies.

The holding in *Crouch* would apply in defendant's favor if defendant had denied Bulger's FMLA request on the ground that it reasonably concluded that Bulger could not be incapacitated if he was able to walk a picket line and voice his opinions to the principal and the crowd. Defendant could reasonably and honestly believe that Bulger was inventing a disability to obtain leave and shield his employment from charges of job abandonment. However, this was not what happened. There is no indication that any person involved in the decision to deny Bulger's request believed or found that his conduct outside the school disproved the factual basis of his FMLA request. The decision to deny Bulger's FMLA request on grounds of insufficient documentation appears to have been uninfluenced by his conduct outside the school.

Defendant's argument recognized how the facts of this case do not fit either a situation of insufficient medical certification or a situation of an employee who is caught in conduct that belies the alleged disability. Defendant argued that it was exempt from FMLA obligations toward Bulger under the unclean hands doctrine. "The unclean hands doctrine is a self-imposed ordinance that closes the doors of a court of equity to one tainted with inequitableness or bad faith relative to the matter in which he seeks relief." *Save Our Downtown v Traverse City*, 343 Mich App 523, 544; 997 NW2d 498 (2022) (quotation marks and citation omitted). Defendant also stated that its District Policy 3430.01 states that FMLA fraud occurs "when employees take FMLA leave for purposes other than those permitted under FMLA," including "[e]ngaging in off-duty activity,

while on FMLA leave for one's own serious health condition, that is inconsistent with the limitations the serious health condition imposes."   In other words, defendant did not argue that it justifiably rejected the physician's notes.  It argued that Bulger was not entitled to relief because, in retrospect, his claim of disability was not credible and because it came within defendant's policy definition of FMLA fraud.

Defendant's unclean hands argument is potentially meritorious.  Bulger did not deny that he demonstrated against reopening outside the school; argued with the principal; and exhorted parents, students, and staff not to enter the building.  This level of activity was inconsistent with severe headaches and his physician's order to stay off work.  Moreover, Bulger's vehement stance against in-person instruction negates any inference that Bulger would have reported to work if not for his migraines.  Instead, Bulger presented conflicting narratives to explain his activities between August 31, 2020 and September 17, 2020: first, that he was suffering from severe migraines that prevented him from working and would continue to prevent him from working for at least several weeks; and second, that he openly resisted the resumption of in-person classes.  However, the trial court did not address this issue, as it granted summary disposition on the narrow grounds of eligibility.  On remand, the trial court may consider defendant's unclean hands argument as an alternative basis for granting summary disposition for defendant.

Reversed and remanded for further proceedings consistent with this opinion.  We do not retain jurisdiction.  Bulger may tax costs as the prevailing party.  MCR 7.219(A).

/s/ Christopher M. Murray
/s/ Michael J. Kelly
/s/ Noah P. Hood