**Warnell AUSTIN, Plaintiff,**

v.

**Mike HAAKER, et al., Defendants.**

**No. CIV. A. 98–2283–GTV.**

United States District Court,
D. Kansas.

Nov. 24, 1999.

---

§ 2000e *et seq.* ("Title VII"), and unlawful interference in violation of the Family and Medical Leave Act, 29 U.S.C. § 2601 *et seq.* ("the FMLA"). Plaintiff contends that defendant subjected him to a series of adverse employment actions, beginning with a suspension in September 1997 and culminating in the termination of his employment the following June, because he is African–American and in retaliation for exercising his rights under Title VII, § 1981, and the FMLA. The case is before the court on defendant's motion for summary judgment (Doc. 17). For the reasons set forth below, the motion is granted with respect to plaintiff's Title VII and § 1981 discrimination claims, denied with respect to plaintiff's Title VII and § 1981 retaliation claims, and granted in part and denied in part with respect to plaintiff's FMLA interference claims.

### I. Factual Background

The following facts are either uncontroverted or are based on evidence submitted in summary judgment papers and viewed in a light most favorable to plaintiff. Immaterial facts and facts not properly supported by the record are omitted.

Plaintiff began employment with defendant in April 1993 as a seasonal employee at the position of pallet sorter, and became a full-time employee at that position on June 19, 1995.

Under defendant's Attendance Policy, the employee is issued points for various attendance-related missteps. As points accumulate, the employee is disciplined accordingly. The employee may also be disciplined for violating defendant's Rules of Conduct; one such Rule prohibits excessive absenteeism. Defendant's short term disability ("STD") policy, called the Sick Pay/STD Program, provides up to 14 weeks of STD leave at 75% benefits for employees who have exercised all of their sick days.

Between June 1996 and December 1997, defendant disciplined plaintiff under its Rules of Conduct with verbal or written

Bobbie R. Bailey, Nanci L. Moorhead, Kansas City, MO, for Warnell Austin, plaintiffs.

David B. Kesler, J.Y. Elliott, III, Miller & Martin LLP, Chatanooga, TN, Eric W. Smith, Spencer, Fane, Britt & Browne, Kansas City, MO, for Mike Durrell, Johnston Coca–Cola Bottling Group, Inc., defendants.

### MEMORANDUM AND ORDER

VanBEBBER, Chief Judge.

Plaintiff Warnell Austin brings this action against defendant Johnston Coca–Cola Bottling Group, Inc. alleging racial discrimination and retaliation in violation of 42 U.S.C. § 1981 (" § 1981") and Title VII of the Civil Rights Act of 1964, 42 U.S.C.

warnings on six occasions, either for excessive absenteeism or for missing mandatory overtime days.

On September 9, 1996, plaintiff missed work due to illness. Defendant issued a verbal warning for excessive absenteeism under its Rules of Conduct. Later that month, plaintiff was absent on FMLA leave for one week in order to care for his ill mother. On October 1, 1996, upon plaintiff's return from FMLA leave, defendant suspended him for five days pursuant to its Attendance Policy.

In April 1997, plaintiff took FMLA leave for several days due to complications resulting from a gastric ulcer; he took FMLA leave again from May 12 through July 21 due to a severe back injury. That November, plaintiff missed a mandatory overtime Sunday and defendant issued a verbal warning.

On December 7, 1997, plaintiff missed another mandatory overtime Sunday. Defendant issued plaintiff a written warning for failure to observe work schedules, and a suspension for excessive absenteeism. This absence was the third occasion on which plaintiff had missed a mandatory overtime Sunday, and the second occasion within the previous twelve months. Plaintiff alleges that three similarly situated Caucasian employees missed two or more such mandatory overtime days without being suspended.[1]

Later that month, plaintiff was granted FMLA leave for the third time that year because of his gastric ulcer. Plaintiff was away from work from December 26, 1997 until January 8, 1998. That January, plaintiff contacted and met with an attorney. In February 1998, plaintiff was af-

flicted again with complications from his gastric ulcer. Plaintiff was away on STD leave from February 9, 1998 to February 20, 1998. During that time, plaintiff's mother died and he missed another week on funeral leave and vacation.

Plaintiff asserts that, while he was away on STD leave or in the weeks immediately prior, defendant became aware of his participation in meetings with an attorney about litigation against Coca–Cola. In mid-February 1998, a deponent in an unrelated lawsuit testified that plaintiff was planning to file a complaint with the Equal Employment Opportunity Commission ("EEOC") and that plaintiff had been present at meetings with an attorney. On March 2, 1998, plaintiff filed a complaint with the EEOC.

On March 3, 1998, plaintiff's first day back at work after his STD leave, plaintiff's supervisors met with plaintiff and gave him a letter entitled "Last Chance Agreement." In this letter, defendant informed plaintiff that he had no remaining sick days or FMLA leave available, and that "if [he was] absent, tardy or [left] early in the next twelve (12) months it would result in [his] termination." The agreement also suspended defendant's Attendance Policy, noting that plaintiff was "exempt from the present point system." During this meeting, plaintiff's supervisors asked him whether he had a tape recorder on his person. Plaintiff contends that this query was a reference to events in the unrelated lawsuit pending at that time in which plaintiff's name had been mentioned.

On June 12, 1998, plaintiff called in sick. On the following Monday, June 15, 1998, defendant terminated plaintiff's employ-

---

1. Specifically, plaintiff alleges that "[o]ther similarly situated Caucasian employees had missed two or more mandatory Sundays without receiving any discipline. I know that Pam Friend missed more than two mandatory Sundays and was not suspended. Scott Campbell also missed two mandatory Sundays and was not suspended. I work with both of these individuals and was present on the days that they missed. I know that they were not suspended like I was." Plaintiff later testified that he thought Pam Friend missed "three or four, maybe five" mandatory overtime Sundays. Plaintiff also testified that "a couple of weeks later Danny Cunningham's 19–year–old stepdaughter was ill or something and I think he had missed his second and third mandatory Sunday and I think maybe [for] his second one he did get [written] up, but [for] his third one he was condoned and given money."

ment for violating the Last Chance Agreement. Ten days later, plaintiff filed a complaint with this court.

## II. Analysis

### A. Summary Judgment Standards

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." Fed. R.Civ.P. 56(c). The requirement of a "genuine" issue of fact means that the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *See Anderson v. Liberty Lobby*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Essentially, the inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251–52, 106 S.Ct. 2505.

The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. This burden may be met by showing that there is a lack of evidence to support the nonmoving party's case. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Once the moving party has properly supported its motion for summary judgment, the burden shifts to the nonmoving party to show that there is a genuine issue of material fact left for trial. *See Anderson*, 477 U.S. at 256, 106 S.Ct. 2505. "A party opposing a properly supported motion for summary judgment may not rest on mere allegations or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial." *Id.* Therefore, the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment. *See id.* The court must consider the record in the light most favorable to the nonmoving party. *See Bee v. Greaves*, 744 F.2d 1387, 1396 (10th Cir.1984).

### B. Title VII and § 1981

#### 1. Discrimination Claims

Plaintiff claims that a number of adverse employment actions to which he was subjected were the result of defendant's race-based discrimination in violation of Title VII and § 1981. After examining the facts and evidence in the light most favorable to plaintiff, the court finds only one incident which suggests discrimination either directly or indirectly: plaintiff asserts that defendant suspended him in December 1997 for missing mandatory overtime days, even though three similarly situated Caucasian employees also missed mandatory overtime days but were not suspended.

In order to present a prima facie case of racial discrimination in violation of Title VII and § 1981,[2] plaintiff must show that he is a member of a protected class, that he suffered an adverse employment action, and that similarly situated employees were treated differently. *Trujillo v. University of Colo. Health Sciences Ctr.*, 157 F.3d 1211, 1215 (10th Cir.1998). Once plaintiff establishes a prima facie case, the court applies the *McDonnell Douglas*[3] burden-shifting framework under which the court analyzes whether defendant has produced a legitimate, nondiscriminatory reason for the adverse employment action, and whether plaintiff has demonstrated that the employer's legitimate, nondiscriminatory reason is pretextual. *See id.; Colter v. Dobski & Assocs., Inc.*, 35 F.Supp.2d 824 (D.Kan.1999).

Plaintiff is an African–American and so satisfies the first requirement of a

---

**2.** The court analyzes § 1981 discrimination claims according to the same standards as Title VII discrimination claims. *See Patterson v. McLean Credit Union*, 491 U.S. 164, 186, 109 S.Ct. 2363, 105 L.Ed.2d 132 (1994); *Dur-*

ham v. Xerox Corp., 18 F.3d 836 (10th Cir. 1994).

**3.** *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973).

prima facie case. His December 1997 suspension constitutes an adverse employment action and satisfies the second. *See Jeffries v. State of Kan.*, 147 F.3d 1220, 1232 (10th Cir.1998) (noting that Tenth Circuit courts define "adverse employment action" liberally, and make such determinations on a case-by-case basis). Plaintiff has supplied so little information about the three allegedly similarly situated employees, however, that he fails to satisfy the third. For the same reason, he cannot show that defendant's legitimate, nondiscriminatory reason for its action—excessive absenteeism—is pretextual.

The Tenth Circuit has defined "similarly situated employees" as "those who deal with the same supervisor and are subject to the same standards governing performance evaluation and discipline," *Aramburu v. Boeing Co.*, 112 F.3d 1398, 1404 (10th Cir.1997) (quoting *Wilson v. Utica Park Clinic, Inc.*, 76 F.3d 394, 1996 WL 50462 (10th Cir. Feb.7, 1996) (unpublished disposition) (further citation omitted)); *Sims v. Halliburton Co.*, 185 F.3d 875, 1999 WL 495629 (10th Cir. July 14, 1999) (unpublished disposition). Courts should also evaluate whether employees are similarly situated by examining the "work history and company policies applicable to the plaintiff and the intended comparable employees." *Aramburu*, 112 F.3d at 1404.

Plaintiff fails to provide "specific facts" as required by Fed.R.Civ.P. 56 when he states no more than that he "work[ed] with" the employees and that they missed the same or more mandatory overtime days as he did without being suspended. Even if the court assumes that every employee at defendant's facility was subject to defendant's disciplinary policies, the court is still unable to evaluate whether these employees worked under or were disciplined by the same supervisors as plaintiff.

Furthermore, the court is unable to determine whether the employees have similar attendance records or work histories—an especially important inquiry because defendant's Rules of Conduct state that disciplinary decisions are at defendant's discretion and that "compounding circumstances" like excessive absenteeism may affect disciplinary decisions. Critically, plaintiff's December 1997 suspension was for "excessive absenteeism," but he was issued only a written warning for missing the mandatory overtime day. In defendant's written record of the suspension, the supervisor made the following notes:

> Warnell Austin is being given a three-day suspension for excessive absenteeism, and also for showing a pattern in his absenteeism on calling in sick on the first day of the work week. Warnell's absenteeism has not improved since being given disciplinary action for excessive absenteeism on [several prior occasions].

Even though his absenteeism was clearly a factor in his suspension, plaintiff has made no allegation whatsoever about the allegedly similarly situated employees' attendance records. In sum, plaintiff has not presented enough factual evidence either to state a prima facie case or to demonstrate pretext. *See David v. City and County of Denver*, 101 F.3d 1344, 1359–60 (10th Cir.1996) (citing *Equal Employment Opportunity Comm'n v. Flasher*, 986 F.2d 1312, 1320 (10th Cir.1992), for the proposition that differences in treatment occur for so many reasons that even an irrational decision does not compel an inference of illegal discriminatory intent). The court grants defendant's motion for summary judgment with respect to plaintiff's Title VII and § 1981 discrimination claims.

### 2. Retaliation Claims

 Plaintiff alleges that a number of defendant's employment decisions and disciplinary actions were in retaliation for his activities in opposition to racial discrimination, in violation of Title VII and § 1981.[4]

---

4. The court analyzes § 1981 retaliation claims according to the same standards as Title VII retaliation claims. *See Patterson*, 491 U.S. at 186, 109 S.Ct. 2363; *Durham*, 18 F.3d at 836.

Of these allegations, only one survives. Plaintiff claims that defendant issued a Last Chance Agreement and subsequently terminated him in response to his having filed a claim with the EEOC and having met with an attorney. To establish a prima facie case of retaliation, plaintiff must demonstrate that he engaged in a protected activity, that he suffered an adverse employment action, and that a causal connection exists between the protected activity and the employment action. *See Sauers v. Salt Lake County*, 1 F.3d 1122, 1128 (10th Cir.1993). The court then evaluates plaintiff's claims according to the *McDonnell Douglas* burden-shifting analysis. *See McGarry v. Board of County Comm'rs of the County of Pitkin*, 175 F.3d 1193, 1201 (10th Cir.1999); *Sauers*, 1 F.3d at 1128.

Plaintiff's participation in meetings with an attorney and his filing of a complaint with the EEOC constitute protected activities. The March 3, 1998 Last Chance Agreement also constitutes an adverse employment action. By suspending its regular Attendance Policy, defendant altered plaintiff's terms and conditions of employment. Plaintiff asserts that the temporal proximity between his protected activities and the Last Chance Agreement suggests a causal connection. The court agrees.

■ Plaintiff has presented evidence suggesting that defendant became aware in February 1998 that he had consulted an attorney and was planning legal action. In unrelated litigation to which defendant was a party, one Dennis Brown testified in a deposition on February 13, 1998, that plaintiff had attended meetings with an attorney about litigation against defendant and that plaintiff was planning to file a complaint with the EEOC. The Brown deposition occurred while plaintiff was away on STD leave; the very day he returned, defendant issued him the Last Chance Agreement. The temporal proximity of these events strongly suggests a causal connection. *See Conner v. Schnuck Markets, Inc.*, 121 F.3d 1390, 1395 (10th Cir. 1997) (holding that one and one-half months between protected activity and adverse action is sufficient temporal proximity to support retaliatory motive); *Ramirez v. Oklahoma Dept. of Mental Health*, 41 F.3d 584, 596 (10th Cir.1994) (same). Also, plaintiff testified that during the March 3, 1998 meeting in which defendant issued its Last Chance Agreement, his supervisors asked him whether he was carrying a tape recorder. Plaintiff asserts that this query was a reference to events in the litigation in which plaintiff had been mentioned. A trier of fact could reasonably find a causal connection between plaintiff's protected activity and defendant's issuance of the Last Chance Agreement.

Defendant has presented a legitimate, nondiscriminatory reason—excessive absenteeism—for issuing the Last Chance Agreement. Plaintiff counters that the reason is unworthy of belief when he asserts that, at the time of the Last Chance Agreement, he "had not violated any of the defendant's written or verbal attendance rules or Company Rules since ... December 1997." Moreover, temporal proximity also "may throw doubt on defendant's ... justification." *Vigil v. Colorado Dept. of Higher Educ.*, 185 F.3d 876, No. 98–1174, 1999 WL 407479, at *4 (10th Cir. June 21, 1999) (unpublished disposition) (citing *Conner*, 121 F.3d at 1398). A trier of fact could reasonably find defendant's justification to be pretextual. The court denies summary judgment with respect to plaintiff's Title VII and § 1981 claims for retaliation.

#### C. FMLA

##### 1. Plaintiff's Termination

■ Plaintiff asserts that defendant, by terminating plaintiff for excessive absenteeism, unlawfully interfered with his rights under § 2615(a)(1) of the Family and Medical Leave Act, 29 U.S.C. § 2601 *et seq.* by denying him FMLA leave. The court disagrees. Plaintiff has not demonstrated that he gave defendant notice that he wished to exercise his FMLA rights with respect to his June 12, 1998 absence.

Nor has he demonstrated that he was entitled to FMLA leave for that absence.

The FMLA provides eligible employees up to 12 weeks of leave during any 12-month period so that they may care for a relative, welcome a new child, or "because of a serious health condition that makes the employee unable to perform the functions of [his or her] position." 29 U.S.C. § 2612(a)(1). The FMLA also makes it unlawful for employers to "interfere with, restrain, or deny the exercise of" such rights, or to "discharge or in any other manner discriminate against" individuals who oppose any such unlawful practices. 29 U.S.C. § 2615(a)-(b).

Regulations promulgated by the Department of Labor require that, when the employee intends to take FMLA leave for a condition that is not foreseeable, the employee shall provide notice "as soon as practicable" to the employer—generally "within no more than one or two working days of learning of the need for leave." 29 C.F.R. § 825.303(a). *See generally* The Family and Medical Leave Act of 1993, 29 C.F.R. § 825.100 *et seq.* (1995). Regulations governing foreseeable leave provide that

> [a]n employee shall provide at least verbal notice sufficient to make the employer aware that the employee needs FMLA-qualifying leave, and the anticipated timing and duration of the leave. The employee need not expressly assert rights under the FMLA or even mention the FMLA, but may only state that leave is needed.

29 C.F.R. § 825.302(c). Although the court presumes that plaintiff's June 12, 1998 absence was unforeseeable, and thus governed by a different regulation, § 825.302(c) does provide guidance as to what actions might qualify as notice.

While plaintiff was not required to mention the FMLA by name, he should have provided "at least verbal notice sufficient to make the employer aware that the employee need[ed] FMLA-qualifying leave." *Id.* Had he notified defendant that he had been suffering from a serious health condition, he might have met the requirement. However, plaintiff gave defendant no reason whatsoever to suspect that his absence on June 12, 1998 was any different from the many occasions over the preceding three years when he had called in sick. Plaintiff said only that he was ill and could not make it into work.

Plaintiff asserts that he did not mention FMLA leave during the termination meeting[5] because he had been misled by the March 3, 1998 Last Chance Agreement into believing that he was no longer entitled to FMLA leave. The agreement is irrelevant, however, to the court's notice inquiry, because plaintiff needed only to mention that he was suffering from a serious health condition, thereby thrusting the burden onto defendant to "inquire further of the employee if it is necessary to have more information about whether FMLA leave is being sought by the employee, and obtain the necessary details of the leave to be taken." 29 C.F.R. § 825.302(b). Plaintiff did not do so.

Even if plaintiff had satisfied the FMLA's notice requirement, he has not demonstrated that he was entitled to FMLA leave at that time. The FMLA entitlement applies only in certain limited circumstances: because of the birth of a child, the placement of a child with the employee for foster care or adoption, in order to care for a relative, or because of a serious health condition. 29 U.S.C. § 2612(a)(1). Plaintiff argues that he qualified for FMLA leave on June 12, 1998 because of a serious health condition.

**5.** Plaintiff suggests in his "opposition to defendant's motion for summary judgment" that he did inquire about FMLA leave in the June 15, 1998 termination meeting. Not only is this allegation absent from both parties' factual assertions, but it is directly contradicted in plaintiff's affidavit at paragraph 45. Furthermore, plaintiff makes the allegation for the first time in the argument portion of his brief and fails to refer the court to any portion of the record that might provide support. The court therefore disregards the allegation.

The regulations define "serious health condition" as "an illness, injury, impairment, or physical or mental condition that involves ... continuing treatment by a health care provider," including "[a] period of incapacity (i.e., inability to work) ... due to a chronic serious health condition." 29 C.F.R. § 825.114(a)(2)(iii). The regulations define "chronic serious health condition" as one that "requires periodic visits for treatment by a health care provider," "continues over an extended period of time," and "may cause episodic rather than a continuing period of incapacity." § 825.114(a)(2)(iii)(A)-(C).

■ Plaintiff bears the burden of establishing that he is entitled to FMLA leave. *See Olsen v. Ohio Edison Co.,* 979 F.Supp. 1159, 1164 (N.D.Ohio 1997). Although plaintiff alleges that on June 12, 1998, he was "sick with the same gastric disorder that [he] had taken time off for and been hospitalized for in the past," he has produced no evidence to support that allegation. Several courts have held that an employee must present specific evidence that he or she suffers from a serious health condition, and cannot rely on his own assessment of his health. *See, e.g., Joslin v. Rockwell Intern. Corp.,* 8 F.Supp.2d 1158, 1161 (N.D.Iowa 1998); *Olsen,* 979 F.Supp. at 1166 (holding that, under the FMLA, an employee must demonstrate that " 'a health provider' made a professional assessment of his [or her] condition and determined, based on that assessment, that an extended absence from work was necessary"); *Brannon v. Osh-Kosh B'Gosh, Inc.,* 897 F.Supp. 1028, 1037 (M.D.Tenn.1995) (holding that an employee's own testimony is legally insufficient to demonstrate a serious health condition). *See also Martyszenko v. Safeway, Inc.,* 120 F.3d 120, 123 (8th Cir.1997) (noting that, "uniformly, courts applying the FMLA expressly or impliedly have required a showing of incapacity"). The court agrees. The FMLA "was 'not intended to cover short-term conditions for which treatment and recovery are brief.'" S.Rep. No. 103-3, at 28 (1993), *reprinted in* 1993 U.S.C.C.A.N. 3, 30 (quoted in *Martyszenko,* 120 F.3d at

122). As the court in *Olsen* aptly remarks, "Obviously, Congress did not intend for an employee to stand on his or her FMLA rights whenever a need for aspirin or cold tablets arose." 979 F.Supp. at 1163.

In order for plaintiff to demonstrate that he was entitled to FMLA leave for a chronic serious health condition, he must produce specific evidence showing that he was unable to work on that day; that his ailment on that day was due to an ongoing condition that requires periodic treatment by a doctor; and that his ailment was one that continued over an extended period of time. 29 C.F.R. § 825.114(a)(2)(iii)(A)-(C). He has not done so.

The court grants defendant's motion for summary judgment with respect to the portion of plaintiff's FMLA claim relating to the termination of his employment.

### 2. Last Chance Letter and September 1996 Suspension

■ Plaintiff also claims that defendant violated the FMLA's prohibition against interference by retaliating against him for exercising his FMLA rights. 29 U.S.C. § 2615(a)(1). Plaintiff must demonstrate a prima facie case by showing that he engaged in activity protected under the FMLA, that he subsequently suffered adverse employment action by defendant, and that a causal connection exists between plaintiff's activity and the adverse action. *See Richmond v. ONEOK, Inc.,* 120 F.3d 205, 208 (citing *Morgan v. Hilti, Inc.,* 108 F.3d 1319, 1323 (10th Cir.1997)). If plaintiff so demonstrates, the court then applies the *McDonnell Douglas* framework. *See id.*

Plaintiff took FMLA leave on several occasions; defendant subjected him to adverse employment actions on several occasions. After a full examination of the facts in a light most favorable to plaintiff, the court determines that only the Last Chance Agreement and the September 1996 suspension bear a causal connection to those occasions on which plaintiff took FMLA leave.

On September 9, 1996, plaintiff missed work due to illness and defendant disciplined him under its Rules of Conduct on the same day. Fifteen days later, plaintiff took FMLA leave. On October 1, the day he returned from leave, defendant issued further discipline for the September 9 absence, suspending plaintiff under its Attendance Policy. Plaintiff points out that this was the first occasion in several years of employment that defendant disciplined him under its Attendance Policy. The temporal proximity between the FMLA leave and the suspension, the fact that defendant disciplined plaintiff on two occasions for the same absence, and defendant's somewhat unusual exercise of the Attendance Policy suggest a causal connection. *See Marx v. Schnuck Markets, Inc.*, 76 F.3d 324, 329 (10th Cir.1996) ("[P]rotected conduct closely followed by adverse action may justify an inference of retaliatory motive.").

Moreover, the wording of the March 1998 Last Chance Agreement, issued the day plaintiff returned from STD leave, suggests that the Agreement is causally connected to plaintiff's exercise of his FMLA rights. The letter reads in pertinent part, "Your attendance record has been unacceptable .... Currently, you have no available sick days and you have used all of your Family Medical Leave for a 12 month period .... If you are absent, tardy or leave early in the next twelve (12) months it will result in termination." A trier of fact could reasonably interpret the agreement to suggest that plaintiff was not entitled to FMLA leave; such a suggestion violates the FMLA's prohibition against interference. *See* 29 U.S.C. § 2615(a)(1). Moreover, a trier of fact could interpret the wording of the letter to suggest that plaintiff's record is unacceptable because he had taken FMLA leave—also a violation of § 2615(a)(1).

Defendant asserts that it took these disciplinary actions in response to excessive absenteeism—a legitimate, nondiscriminatory reason. However, plaintiff has created a genuine issue of material fact as to whether "excessive absenteeism" was a pretext for retaliating against plaintiff and for interfering with plaintiff's FMLA rights.

The court denies summary judgment with respect to the portions of plaintiff's FMLA interference claim relating to the October 1996 suspension and the Last Chance Agreement.

IT IS, THEREFORE, BY THE COURT ORDERED that defendant's motion for summary judgment (Doc. 17) is granted with respect to plaintiff's Title VII and § 1981 discrimination claims, denied with respect to plaintiff's Title VII and § 1981 retaliation claims, granted with respect to the portions of plaintiff's FMLA claim relating to his termination, and denied with respect to the portions of plaintiff's FMLA claim relating to the October 1996 suspension and the Last Chance Agreement.

The clerk shall mail copies of this order to counsel of record.

**IT IS SO ORDERED.**