**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 12a1125n.06

09-2087

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**

*Oct 31, 2012*

DEBORAH S. HUNT, Clerk

| | |
|---|---|
| MARY JO HYLDAHL, | ) |
| | ) ON APPEAL FROM THE |
| Plaintiff-Appellee, | ) UNITED STATES DISTRICT |
| | ) COURT FOR THE EASTERN |
| v. | ) DISTRICT OF MICHIGAN |
| | ) |
| MICHIGAN BELL TELEPHONE COMPANY, | ) **OPINION** |
| | ) |
| Defendant-Appellant. | ) |
| _____ | ) |

Before:  BOGGS and WHITE, Circuit Judges, and BERTELSMAN,[*] District Judge.

**HELENE N. WHITE, Circuit Judge.**  Michigan Bell appeals the district court's denial of its motions for directed verdict and new trial, as well as the court's award of liquidated damages. We **AFFIRM.**

**I.**

Mary-Jo Hyldahl brought suit under the Family and Medical Leave Act (FMLA or the Act), 29 U.S.C. § 2601 *et seq.*, alleging that Michigan Bell, her employer of 11 years, violated the Act by denying her leave on December 14, 2006 (interference claim), and by terminating her employment for using FMLA leave (retaliation claim).  Michigan Bell removed the case and, following discovery, moved for summary judgment on both claims.  The district court dismissed the retaliation claim, and

---

[*]The Honorable William O. Bertelsman, United States District Court Judge for the Eastern District of Kentucky, sitting by designation.

1

the interference claim was tried to a jury. The jury found in Hyldahl's favor and awarded front and back pay. On Hyldahl's post-judgment motion for liquidated damages, the district court awarded her liquidated damages of $ 134,936.27.

The district court's thorough opinion sets forth the facts, which we adopt and do not repeat, as neither party takes issue with them. *Hyldahl v. AT&T*, 642 F. Supp. 2d 707, 709-14 (E.D. Mich. 2009).

## II.

Michigan Bell contends that the district court erred in denying its motion to vacate the jury verdict and enter judgment in its favor because Hyldahl did not establish that she was entitled to leave on December 14, 2006.[1] Specifically, Michigan Bell asserts that no reasonable jury could find that the January 6, 2007 supplemental certification of Hyldahl's treaters, Dr. Raval, a psychiatrist, and Olsen, a licensed master social worker, is a reliable medical assessment. Michigan Bell argues that her treaters neither saw nor spoke to her on that day and thus lacked the requisite knowledge of her condition to certify her leave, leaving only her own testimony, which cannot, standing alone, establish that she was incapable of working on that date.

---

[1] The FMLA prohibits an employer from interfering with, restraining or denying the exercise of or attempt to exercise any right provided by the Act. 29 U.S.C. § 2615(a)(1).

> To prevail on an FMLA interference claim, a plaintiff must establish that (1) she was an eligible employee as defined under the FMLA; (2) her employer was a covered employer as defined under the FMLA; (3) she was entitled to leave under the FMLA; (4) she gave the employer notice of her intention to take FMLA leave; and (5) her employer denied FMLA benefits to which she was entitled.

*Novak v. MetroHealth Med. Ctr.*, 503 F.3d 572, 577-78 (6th Cir. 2007) (emphasis added). Only the third element is in dispute – whether Hyldahl was entitled to leave on December 14, 2006.

This court reviews de novo a denial of a motion for directed verdict. *American & Foreign Ins. Co. v. Bolt*, 106 F.3d 155, 157 (6th Cir. 1997).

> On a motion for a judgment notwithstanding the verdict or for a directed verdict, the district court must determine whether there was sufficient evidence presented to raise a material issue of fact for the jury. As applied in this context, "sufficient evidence" will be found unless, when viewed in the light of those inferences most favorable to the nonmovant, there is either a complete absence of proof on the issues or no controverted issues of fact upon which reasonable persons could differ. The determination is one of law to be made in the first instance by the district court. The standard remains the same when the trial court's decision is reviewed on appeal.

*Monette v. AM-7-7 Baking Co., Ltd.*, 929 F.2d 276, 280 (6th Cir. 1991), *see also* Fed. R. Civ. P. 50(a), (b).

## A.

Section 2613 of the FMLA, entitled "Certification," provided at pertinent times:

> An employer may require that a request for leave . . . be supported by a certification issued by the health care provider of the eligible employee . . . .

> > (b) Sufficient certification

> > Certification . . . shall be sufficient if it states --

> > (1) the date on which the serious health condition commenced;

> > (2) the probable duration of the condition;

> > (3) the appropriate medical facts within the knowledge of the health care provider regarding the condition; . . . .

> > (6) in the case of certification for intermittent leave, or leave on a reduced schedule, under section 2612(a)(1)(D) . . ., a statement of the medical necessity for the intermittent leave or leave on a reduced leave schedule, and the expected duration of the intermittent leave or reduced leave schedule;

29 U.S.C. § 2613(b). A medical certification that contains this information and is signed by the health care provider is presumptively valid. *Novak v. MetroHealth Med. Ctr.*, 503 F.3d 572, 578 (6th Cir. 2007). The employer may overcome this presumption by showing that the certification is invalid or inauthentic. *Id.*

**B.**

Michigan Bell provided no authority below, nor on appeal, supporting that an otherwise valid treater's certification that the employee could not have worked on a given day is rendered invalid or unreliable if not supported by a contemporaneous medical examination. The cases on which it relies are easily distinguished from the instant case. In *Novak*, 503 F.3d 572, the district court granted the employer summary judgment because Novak's certification forms did not establish that her back injury was a serious health condition. This court affirmed, concluding that the defendant employer "satisfied its burden of showing that the certification was unreliable, and [] acted reasonably in refusing to grant FMLA leave on that basis." We noted that Novak's physician of record acknowledged in a certification form that a different doctor had treated Novak's back injury, that she (her physician of record) had not seen Novak in the five months prior, and that she (her physician of record) had no personal knowledge of Novak's current condition and relied solely on what Novak relayed to her regarding the other doctor's assessment of Novak's condition. *Id.* at 578-79.

In contrast, Hyldahl had been under treatment by Dr. Raval and social worker Olsen for seven years, they had certified her for intermittent leave for an ongoing chronic condition – depression and PTSD – a certification Michigan Bell had approved, and their January 6, 2007 supplemental

certification attested that Hyldahl was unable to work on December 14, 2006 because of her serious health condition.

Michigan Bell also relies on *Knox v. Cessna Aircraft Co.*, 314 F. App'x 230 (11th Cir. 2008), another back-injury case. The Eleventh Circuit upheld the grant of summary judgment to Cessna, concluding that Knox failed to establish that he suffered from a serious health condition because he did not show that his back injury required repeated or ongoing treatment, and that his treating physician's testimony and medical certificate were properly excluded as unreliable. Knox's treating physician had testified that he could not state that Knox had a serious health condition based on his personal observation and medical findings, but rather, relied on Knox's self-diagnosis, conveyed to him (the physician) by his nursing assistant. *Id.* at *3-4.

In the instant case, unlike in *Knox*, Dr. Raval and Olsen did not rely on Hyldahl's "self-diagnosis" alone in their supplemental certification, but rather, relied on their familiarity with Hyldahl's mental condition and their course of care (including on-going therapy and prescribed medication), as well as Hyldahl's later reports about how she felt on that day.

Another case Michigan Bell cites, *Olsen v. Ohio Edison Co.*, 979 F. Supp. 1159, 1166 (N.D. Ohio 1997), is also factually distinguishable and supports the district court's determination in the instant case. The district court granted the employer summary judgment, concluding that Olsen's chiropractor's note did not demonstrate that Olsen was required to miss more than three days of work because of his injury, and that Olsen failed to show that the chiropractor acted as a "health care provider" within the meaning of the FMLA. Olsen presented no evidence that the chiropractor had performed a manual manipulation of his spine, and the medical records nowhere indicated that Olsen had a condition revealed by X-ray either before or after the chiropractor excused him from work.

5

The *Olsen* court observed that the treater's determination that the employee cannot work need not be made contemporaneously to the requested time off:

> [] this medical determination need not be made at any particular stage of the illness or at any particular point post-injury. As long as the medical provider's assessment of medical history and of the patient's current condition supports the professional assessment given, and that assessment is that an absence in excess of three days is necessary to proper treatment, a plaintiff employee should withstand summary judgment as to this particular prong of his . . . required showing.

*Id.* at 1166 n.11 (emphasis added). *Olsen* is thus inapposite to our case.

Michigan Bell also relies on *Murphy v. FedEx Nat'l LTL, Inc.*, 618 F.3d 893 (8th Cir. 2010), in which the plaintiff employee took an approved FMLA leave to care for her ill husband. Soon after, the plaintiff's husband died unexpectedly, and she requested an additional thirty days "to take care of things." Her supervisor at FedEx responded, "okay, cool, not a problem, I'll let HR know." Relying on that representation, the plaintiff did not seek additional approval from FedEx and did not seek medical certification. The plaintiff's FMLA claim was submitted to the jury on an estoppel theory. At the conclusion of the plaintiff's proofs, FedEx moved for judgment as a matter of law, the district court denied the motion and also denied "Murphy's offer of proof with respect to two doctors whose testimony the district court had previously excluded in an order granting FedEx's motion *in limine*. The two doctors sought to testify that they would have given Murphy leave certification if she had requested it at the relevant time." 618 F.3d at 898. After the jury returned a verdict in the plaintiff's favor, the district court denied FedEx's renewed motion for judgment as a matter of law or new trial. FedEx appealed, and the plaintiff filed a conditional cross-appeal challenging the exclusion of her proffered experts. *Id.* The Eighth Circuit upheld the district court's

6

exclusion of the doctors' testimony (only one doctor is pertinent for purposes of the instant case, Dr. Sjak-Shie):

> The record shows that Murphy had seen Dr. Sjak-Shie regarding a matter unrelated to her husband's death thirty-six days after her request for leave. At that appointment, Dr. Sjak-Shie prescribed Murphy a sleep aid because she believed Murphy was "coping poorly" with her husband's death. At no point during this examination did Dr. Sjak-Shie examine Murphy for depression or other stress-related conditions, and Dr. Sjak Shie testified that there was no independent medical evidence of Murphy's condition and she relied solely on Murphy's self-report. Further, Dr. Sjak-Shie agreed at her deposition that she did not evaluate Murphy's health condition as it stood at the time of her leave request.

> The district court did not abuse its discretion by excluding Dr. Sjak-Shie's testimony. The relevant inquiry here is the basis of Dr. Sjak-Shie's testimony that, at the time of Murphy's leave request, Dr. Sjak-Shie would have written Murphy a note certifying that Murphy had a serious health condition rendering her unable to work. . . . A necessary prerequisite to this testimony is that Dr. Sjak-Shie in fact had some basis to believe that Murphy had a serious health condition at the relevant time. The record contains no support for that belief; the doctor herself testified that she had no basis for diagnosing Murphy at the relevant time. In light of this testimony, we cannot find that the district court abused its discretion.

618 F.3d at 906 (emphasis added). In *Murphy*, the plaintiff's own doctor testified that she had no basis for diagnosing Murphy at the pertinent time – there was no such testimony here. And, unlike the instant case, there is no indication in *Murphy* that the plaintiff employee had been under the long-term care of Dr. Sjak-Shie, or that Dr. Sjak Shie had at any point treated the plaintiff for depression.

In the instant case, although Dr. Raval and Social Worker Olsen did not see or speak to Hyldahl on December 14, 2006, they certified her leave for that date based on their knowledge of her medical condition, their course of treatment, and Olsen's subsequent discussion with Hyldahl about her mental state and activities on December 14, 2006. Trial testimony established that Hyldahl had treated with Dr. Raval and Olsen for more than seven years. Olsen testified that she spoke to Hyldahl about her need for FMLA leave when Hyldahl requested certification for additional days,

7

and that she and Hyldahl reviewed Hyldahl's activities on December 14, 2006. Dr. Raval testified

that he discussed Hyldahl with Olsen after December 14, 2006, and that he was thus aware of

Hyldahl's medical status. We agree with the district court that under the circumstances present in

this case, the fact that Hyldahl's treaters did not see or speak to her on December 14, 2006 did not

render their supplemental certification invalid or unreliable:

> It is undisputed that Plaintiff was generally certified to utilize FMLA leave prior to December 14. In addition, at Defendant's request, Dr. Raval and Olsen tendered supplemental certification, which relied on the course of care and Plaintiff's later representations about her condition on that day. Dr. Raval and Olsen testified that Plaintiff suffered from chronic, episodic mental health issues. Throughout the course of Plaintiff's treatment, neither suspected Plaintiff of misrepresenting her symptoms or malingering. In addition, each believed that evidence of on-going therapy sessions and use of prescription medication supported the conclusion that Plaintiff continued to suffer from her diagnosed condition.

> Defendant emphasized that neither treater verified Plaintiff's condition on December 14, 2006 or even spoke with her on that date. Put another way, Defendant challenges the professional methodology employed by Dr. Raval and Olsen when certifying Plaintiff. There is no indication that Defendant disbelieved or challenged Dr. Raval and Olsen's diagnosis until surveillance captured [Plaintiff's] conduct on December 14, 2006. While in Defendant's view the treaters should have verified Plaintiff's capacity with respect to each individual request, Defendant has not advanced legal authority requiring such verification. Nor did Defendant offer a professional opinion challenging Dr. Raval's or Olsen's methodology. In contrast, the record indicates that Defendant accepted the certification process that prospectively approved Plaintiff's intermittent leave. On no other occasion was Plaintiff required to have concurrent verification of her incapacity. At trial, Defendant did challenge Dr. Raval and Olsen's certification during their cross examination of each witness. The jury rejected Defendant's interpretation of the record.

*Hyldahl*, 642 F. Supp. 2d at 715-16.[2]

---

[2]In accord with the district court's analysis is *Brown v. Eastern Maine Medical Center*, 514 F. Supp. 2d 104 (D. Me. 2007), in which the employer challenged the employee's doctor's FMLA certification as lacking foundation because the doctor had not examined Brown until after she was fired. The district court rejected the argument:

**C.**

In sum, Michigan Bell provided no authority holding that lack of a contemporaneous medical examination renders invalid or unreliable a treater's certification that the employee could not have worked on a given day because of a serious health condition, where the existence of the serious health condition is not disputed. Because Dr. Raval's and Olsen's supplemental certification met all the requirements for an FMLA certification, § 2613(b), it was presumptively valid, *Novak*, 503 F.3d at 578. Michigan Bell did not rebut that presumption, thus the question whether the supplemental certification was a reliable medical assessment supporting Hyldahl's request for FMLA leave was properly left to the jury, *see, e.g., E. Maine Med. Ctr.*, 514 F.Supp.2d at 109, and the district court properly denied Michigan Bell's motion for directed verdict.

**III.**

Michigan Bell also argues (largely duplicatively) that Hyldahl failed to present sufficient evidence that 1) she was too incapacitated to perform her job on December 14, 2006, and 2) that she used FMLA leave for its intended purpose on that date. We agree with the district court that there were disputed issues of fact on these questions on which reasonable persons could differ, thus these matters were properly left to the jury:

> To the extent that EMMC also challenges Dr. Krause's letter for lack of foundation because Dr. Krause did not examine Brown until after EMMC fired her, I conclude that Dr. Krause's retroactive diagnosis is subject not to Rule 602 but Rule 702. There are currently no *Daubert*-type challenges to his opinion. *The progression of medical conditions and symptoms over time is an expected component of a physician's knowledge; it is not uncommon for a physician to draw conclusions about a patient's past condition based on current observations. The underlying credibility and weight to be given these inferences is a matter for the fact-finder.*

*Id.* at 109 (emphasis added).

9

[] Defendant disputes that Plaintiff offered "specific evidence showing that she was unable to work due to that condition" on December 14, 2006, dkt. # 61 at 9 (citing *Austin v. Haaker*, 76 F. Supp. 2d 1213, 1221 (D. Kan. 1999)), and believes that the record supports a single conclusion – that Plaintiff's activities demonstrated a capability to perform her duties on that date. With respect to Plaintiff's symptomology on December 14, 2006, Plaintiff testified that she experienced anxiety, a feeling of being "overwhelmed," physical pain, and she was still "reeling" from a work-related incident. Defendant argues that Plaintiff did not explain how these emotions impaired her capacity to perform her duties. *Plaintiff's testimony in conjunction with Dr. Raval's and Olsen's testimony concerning Plaintiff's functional abilities provides a plausible basis for the finder of fact to conclude that her anxiety and associated emotions impaired her ability to perform her employment.*

Finally, Defendant argues that Plaintiff's conduct was inconsistent [with] her contention she could not work on December 14, 2006. While a finder of fact could reasonably adopt Defendant's view, the record also supported the jury's conclusion. For instance, Olsen acknowledged that an appropriate response to her symptoms may be to remain at home, but Olsen also testified that, at times, it was appropriate that Plaintiff seek out a "supportive environment." Dr. Raval echoed this view. Olsen also believed that Plaintiff's employment environment included stressors that could exacerbate her symptoms. Accordingly, when her symptoms manifested, the medical providers authorized Plaintiff to be absent from work and to take the course of action that Plaintiff determined to be appropriate – either remaining home or seeking support.

Plaintiff testified about the advice she had received from Dr. Raval and Olsen. She emphasized that she relied on their guidance in determining the symptoms that qualified her to be eligible for FMLA leave. Moreover, the record demonstrates, when confronted by Defendant's investigators, that Plaintiff did not misrepresent or conceal her actions of December 14, 2006. While the Court, if it were the finder of fact, would have difficulty squaring Plaintiff's activities and apparent cognitive and emotional capability with an inability to perform her employment responsibilities on December 14, 2006, Dr. Raval and Olsen's testimony supports the jury's conclusion that Plaintiff self reported consistently with an incapacity. The Court will deny the Rule 50(a) motion.

*Hyldahl*, 642 F. Supp. 2d at 716-17.

The cases Michigan Bell cites[3] are inapposite, as they hold that a plaintiff's own testimony, *standing alone*, is insufficient to prove incapacity under the FMLA, and/or that a plaintiff's own assertions regarding the severity of her medical condition are insufficient to establish a serious health condition. In the instant case, the jury heard testimony not only from Hyldahl, but Dr. Raval and Olsen, regarding Hyldahl's status and functional abilities on December 14, 2006. And, Michigan Bell did not dispute that Hyldahl suffered from a serious health condition on that date – depression and PTSD.[4]

## IV.

Michigan Bell contends that, as an alternative to directing a verdict in its favor, the district court erred in refusing to grant its motion for new trial for erroneously instructing the jury and allowing Hyldahl's counsel to make prejudicial misstatements of the law during closing argument. We disagree.

## A.

The district court instructed the jury in accordance with section 2613 of the FMLA, quoted *supra*, and *Novak*, that an employer who doubts a certification's validity may, but is not required to, obtain a second medical opinion, *Novak*, 503 F.3d at 580 ("we continue to view the language of

---

[3]*Deleva v. Real Estate Mortg. Corp.*, 2007 U.S. Dist. LEXIS 45136, at *37 (N.D. Ohio June 21, 2007); *McClure v. Comair, Inc.*, 2005 WL 1705739, at *6 (E.D. Ky. July 20, 2005); *Levine v. Children's Museum of Indianapolis, Inc.*, 2002 WL 1800254, at *6 (S.D. Ind. July 1, 2002); *Joslin v. Rockwell Int'l Corp.*, 8 F. Supp. 2d 1158, 1160-61 (N.D. Iowa 1998); *Brannon v. Oshkosh B'Gosh, Inc.*, 897 F. Supp. 1028, 1037 (M.D. Tenn. 1995).

[4]Michigan Bell claims support for its position in the district court's remarks suggesting that, had it been the factfinder, it would have concluded contrary to the jury. These arguments mischaracterize what the district court was actually explaining – that reasonable minds could differ on whether Hyldahl was entitled to leave, and thus that Michigan Bell was not entitled to a directed verdict.

11

29 U.S.C. § 2613(c)(1) as merely permissive; therefore an employer's failure to require a second certification does not preclude the employer from contesting the employee's certification."). Because the jury instructions neither contravened the FMLA nor *Novak*, the district court did not abuse its discretion by denying a new trial on the basis of instructional error. *See Barnes v. Owens-Corning Fiberglas Corp.*, 201 F.3d 815, 820 (6th Cir. 2000).

**B.**

Michigan Bell maintains that Hyldahl's closing argument directly contravened *Novak* by stating or suggesting that obtaining a second opinion is the only way an employer can challenge the validity of a medical certification.

Hyldahl's closing argument urged the jury to consider that Michigan Bell *could have* but did not challenge the supplemental medical certification while Hyldahl was still an employee, and that it *could have* sought a second medical opinion. Hyldahl did not argue in closing that Michigan Bell was required to obtain a second opinion or that it waived its right to challenge the medical certification by failing to obtain a second opinion.

As the district court observed, Michigan Bell's trial strategy was to undermine the supplemental certification Dr. Raval and Olsen supplied certifying that Hyldahl was incapable of working on December 14, 2006. Under the FMLA, when an employer questions the adequacy of a medical certification, the employer may seek a second medical opinion regarding the employee's condition. *See* 29 C.F.R. § 825.307[5] (provision in effect to 1/16/2009, entitled "What may an

---

[5] 29 C.F.R. § 825.307 provided until January 16, 2009:

(a) [] a health care provider representing the employer may contact the employee's

12

employer do if it questions the adequacy of a medical certification?") And "whenever the employer finds a certification incomplete," it must "provide the employee a reasonable opportunity to cure any such deficiency." 29 C.F.R. § 825.305(d) (provision in effect until 1/16/09); *Novak*, 503 F.3d at 579 ("We have indeed recognized that an employer who finds an employee's certification to be "incomplete" has a duty to inform the employee of the deficiency and provide the employee a 'reasonable opportunity' to cure it. Moreover, we have previously recognized that other courts will impose this duty on employers when the FMLA certification is merely 'inadequate,' rather than 'incomplete.'") (internal citations omitted).

The district court properly concluded that because Michigan Bell directly attacked Hyldahl's treaters' belief that they could formulate a professional opinion in the manner that they did regarding

health care provider, with the employee's permission, for purposes of clarification and authenticity of the medical certification.
. . . .
    (2) An employer who has reason to doubt the validity of a medical certification may require the employee to obtain a second opinion at the employer's expense. Pending receipt of the second (or third) medical opinion, the employee is provisionally entitled to the benefits of the Act . . . If the certifications do not ultimately establish the employee's entitlement to FMLA leave, the leave shall not be designated as FMLA leave and may be treated as paid or unpaid leave under the employer's established leave policies. The employer is permitted to designate the health care provider to furnish the second opinion, but the selected health care provider may not be employed on a regular basis by the employer . . . .
. . . .
    (c) If the opinions of the employee's and the employer's designated health care providers differ, the employer may require the employee to obtain certification from a third health care provider, again at the employer's expense. This third opinion shall be final and binding. The third health care provider must be designated or approved jointly by the employer and the employee. The employer and the employee must each act in good faith to reach agreement on whom to select for the third opinion provider . . . . If the employer does not attempt in good faith to reach agreement, the employer will be bound by the first certification. If the employee does not attempt in good faith to reach agreement, the employee will be bound by the second certification . . . .

Hyldahl's request for FMLA leave for December 14, 2006, it was not misleading for Hyldahl's closing argument to discuss the *availability* of a second opinion.

Both Hyldahl's closing argument and the district court's jury instructions were in accord with the language of the FMLA and did not contravene *Novak*. The district court thus did not err in denying Michigan Bell's motion for a new trial.

## V.

Michigan Bell's final argument is that we must vacate the liquidated-damages award and enter judgment in its favor on that claim because it showed that Mary Glass, who denied Hyldahl's request for leave for December 14, 2006, had both a subjective good-faith belief and an objectively reasonable belief that she did not interfere with Hyldahl's FMLA rights by denying Hyldahl's request for leave.

This court reviews for abuse of discretion an award of liquidated damages under the FMLA. *Hoge v. Honda of Am. Mfg., Inc.*, 384 F.3d 238, 243 (6th Cir. 2004).

> Section 2617(a)(1)(A)(iii) of the FMLA provides that an employer shall be liable for an amount of liquidated damages, in addition to compensatory damages equal to the amount of wages, salary, employment benefits, or other compensation denied or lost to an employee, plus interest, by reason of an employer's violation of 29 U.S.C. § 2615. *Chandler* [*v. Specialty Tires of Am.*], 283 F.3d [818,] 827 [(6th Cir. 2002)]. Although liquidated damages are the norm in cases where an employer violates § 2615, the district court may reduce such an award to comprise only compensatory damages if the employer "proves to the satisfaction of the court that the act or omission which violated section 2615 . . . was in good faith and that the employer had reasonable grounds for believing that the act or omission was not a violation of section 2615." 29 U.S.C. § 2617(a)(1)(A)(iii). "The employer must therefore show *both* good faith *and* reasonable grounds for the act or omission." *Chandler*, 283 F.3d at 827 (emphasis in original).

*Id.* at 251 (emphasis added). Thus, to avoid liquidated damages, Michigan Bell had to prove to the district court's satisfaction that Glass's decision to disallow FMLA leave for December 14, 2006 was made in good faith and that Glass had reasonable grounds for believing that the decision did not violate the FMLA. *Id.*

## A.

The district court awarded liquidated damages following a post-trial evidentiary hearing on that issue, concluding that Glass had acted in good faith but did not have reasonable grounds for believing that the FMLA authorized her to give prevailing weight to the opinion of Dr. Judith Lichtenstein, Michigan Bell's medical evaluator who had neither seen nor examined Hyldahl, and reject the facially valid certification Dr. Raval and Olsen provided.

Michigan Bell first argues that the district court could not have fairly concluded that Glass did not have reasonable grounds for believing that the FMLA authorized her actions because the district court itself stated that had it been the trier of fact, it would have had "difficulty squaring Plaintiff's activities and apparent cognitive and emotional capability" on December 14, 2006 with her alleged inability to work. The district court did, indeed, make this observation in the course of denying Michigan Bell's Rule 50(a) motion. But in ruling on the liquidated damage issue the district court made many other observations as well, including:

> Although a lay person can easily determine if an employee who is out of work because she cannot walk is improperly walking while on leave, it is more difficult for a lay person to determine if an employee is out of work because of anxiousness, and unable to concentrate to the point that she is unable to perform the essential functions of her work.

15

Taken in context, we cannot say that the district court's earlier observation precluded it from finding that in light of all the circumstances, Glass did not have reasonable grounds for believing that she could rely on Lichtenstein's opinion.

Michigan Bell also argues that the liquidated damages award must be set aside because the district court erroneously believed that Michigan Bell was required to seek a second opinion, in direct contradiction to *Novak*, *supra*. It argues that the case the district court cited, *Miller v. AT&T*, 60 F. Supp. 2d 574, 580 (S.D. Va. 1999), *affirmed in pertinent part on other grounds*, 250 F.3d 820, 836 n.13 (4th Cir. 2001),was disapproved of by the Fourth Circuit in *Rhoads v. FDIC*, 257 F.3d 373, 385-86 (4th Cir. 2001), to the extent that it held that an employer who contests the validity of a medical certification *must* use the second-opinion process. *Rhoads*, 257 F.3d at 385 (agreeing with the Eighth Circuit's determination in *Stekloff v. St. John's Mercy Health Sys.*, 218 F.3d 858, 860 (8th Cir. 2000), that section 2613(c)(1) is merely permissive and thus that an employer does not waive future opportunity to contest the validity of a medical certification by not seeking a second opinion.)

Although the district court's opinion can be read as Michigan Bell portrays it, there is no question that the district court was aware of *Novak* and understood that the second-opinion process is not required. In context, it is clear that the district court's determination that Glass was obliged to seek a second, or third, opinion was based solely on the facts of the case. Michigan Bell cites no authority that precludes a district court from considering or weighing as a factor an employer's choice not to utilize the second-opinion process when determining whether to award liquidated damages. As *Rhoads* observed, "This construction of the Act [that given section 2613(c)(1)'s permissive language, the FMLA does not require an employer to obtain a second opinion or else

16

waive any future opportunity to contest the validity of a certification] does not mean that there are not potential pitfalls for an employer who chooses not to pursue a second opinion." 257 F.3d at 386.

Liquidated damages are presumptively awarded against an employer who violates the FMLA, and it is the employer's burden to demonstrate that its decision to deny leave was both made in good faith and based on reasonable grounds. 29 U.S.C. § 2617(a)(1)(A)(iii). However, even if the employer demonstrates both requirements, it is still within the district court's discretion whether to award liquidated damages. *Id.* In the instant case, the district court's opinion, considered as a whole, amply supports its conclusion that Glass did not have reasonable grounds for believing that "the FMLA provided her with authority to give prevailing weight to a non-treating health care provider, who had never examined the employee, and reject the facially valid certification of a treating provider." The court's judgment was not an abuse of discretion.

We AFFIRM the district court's denial of Michigan Bell's motions for directed verdict and new trial, and uphold the award of liquidated damages.