[Cite as *Brentlinger v. Winsupply, Inc.*, 2022-Ohio-1779.]

**IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY COUNTY**

|   |   |   |
|---|---|---|
| HOPE BRENTLINGER | : | |
| | : | |
| Plaintiff-Appellant | : | Appellate Case No. 29283 |
| | : | |
| v. | : | Trial Court Case No. 2020-CV-1611 |
| | : | |
| WINSUPPLY, INC. | : | (Civil Appeal from |
| | : | Common Pleas Court) |
| Defendant-Appellee | : | |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on the 27th day of May, 2022.

. . . . . . . . . . .

DAVID M. DUWEL, Atty. Reg. No. 0029583, 130 West Second Street, Suite 2101, Dayton, Ohio 45402
      Attorney for Plaintiff-Appellant

MARY E. LENTZ, Atty. Reg. No. 0043985 & MARTIN A. FOOS, Atty. Reg. No. 0065762, 109 North Main Street, Suite 500, Dayton, Ohio 45402
      Attorneys for Defendant-Appellee

. . . . . . . . . . . .

LEWIS, J.

{¶ 1} Plaintiff-Appellant Hope Brentlinger ("Brentlinger") appeals from the trial court's order granting summary judgment to Defendant-Appellee Winsupply, Inc. ("Winsupply") on her disability discrimination and Family and Medical Leave Act ("FMLA") interference claims.

I.      Facts and Course of Proceedings

{¶ 2} Brentlinger was diagnosed with Crohn's Disease around 2004 or 2006. December 10, 2020 Deposition of Hope Brentlinger ("Brentlinger Depo."), p. 60.  At the time of her diagnosis, Brentlinger was working for a company called Dempsey.  She applied for and was approved for FMLA leave in order to allow her to undergo a resection due to her Crohn's disease.  *Id.* at 64.  During her nine years at Dempsey, Brentlinger had worked in the payroll and human resources departments.   Part of her job responsibilities included providing FMLA paperwork to any employees who were requesting FMLA leave.  If any employees missed work for three or more consecutive days at Dempsey and had not yet requested FMLA paperwork, Brentlinger would seek out the employees and get the paperwork to them.  *Id.* at 22-28.  She left her employment at Dempsey in 2010.  *Id.* at 22-23.

{¶ 3} Brentlinger then worked approximately for four years at Millat Industries in the payroll and human resources department.  *Id.* at 15-16.  As part of her duties, Brentlinger handled all of the FMLA paperwork but did not make the decision as to whether the FMLA leave was granted or denied.  *Id.* at 17-18.

{¶ 4} In October 2016, Brentlinger began her employment at Winsupply as a payroll administrator. Annette Turner hired Brentlinger and was her supervisor at Winsupply. *Id.* at 44-45. Brentlinger's co-workers, including Turner, were aware that she had been diagnosed with Crohn's disease. *Id.* at 60. According to Brentlinger, she was sick every day in 2019 with "flare-ups" due to Crohn's disease. *Id.* at 113. Despite this, she did not request any accommodations at work to help with the flare-ups. *Id.* at 119. Moreover, she did not miss more than two consecutive days because of a Crohn's flare-up. *Id.* at 158-59. Rather, Brentlinger was able to work through her flare-ups. *Id.* at 159. She did, however, attribute most of her tardy arrivals and missed days of work in 2019 to her Crohn's disease flare-ups. *Id.* at 94.

{¶ 5} Brentlinger had a May 20, 2019 appointment with Dr. Barde, her Crohn's disease specialist, who informed her that he wanted her to begin a treatment soon on Humira, if the treatment was approved by her health insurance. *Id.* at 74. Brentlinger had a follow-up appointment with Dr. Barde scheduled for June 10, 2019. She requested FMLA paperwork from her co-worker, Heather Bosron, at least two times before this appointment. *Id.* at 73-76. Further, Brentlinger testified that she spoke with her supervisor, Turner, between May 20 and June 10, 2019, about possibly needing to request FMLA leave in case there were side effects from using Humira. *Id.* at 72-73, 77-78. Turner did not recall any such conversation. April 19, 2021 Deposition of Annette Turner, p. 18-19.

{¶ 6} Brentlinger did not feel well on June 10, 2019, and rescheduled her doctor's appointment to June 17, 2019. Brentlinger Depo., p. 136. On the morning of June 12,

2019, she sent a text message to Turner letting her know that she would be arriving late to work due to some car troubles. *Id.* at 150. Turner texted Brentlinger to call her. During their subsequent telephone conversation, Turner informed Brentlinger that she was being terminated from employment due to excessive absences and payroll errors. *Id.* at 151-52.

{¶ 7} On April 2, 2020, Brentlinger commenced an action against Winsupply alleging that Winsupply had improperly interfered with her FMLA leave and that Winsupply had discriminated against her based on her disability. On March 19, 2021, Winsupply filed a motion for summary judgment, contending that Brentlinger had failed to show that she was incapacitated from a serious medical condition under the FMLA and that she had a disability under Ohio law.

{¶ 8} On September 23, 2021, the trial court granted Winsupply's motion for summary judgment and dismissed the two claims. According to the trial court, Brentlinger had failed to establish that she was entitled to FMLA leave. In particular, the trial court concluded that she had failed to create a genuine issue of material fact regarding whether she was incapacitated within the meaning of the FMLA due to a chronic serious health condition. Regarding the disability discrimination claim, the trial court found that Brentlinger had not established a genuine issue of material fact that she was disabled, that Winsupply fired her due to a disability, and that despite her disability she could still safely perform the essential functions of her job.[1] September 23, 2021 Order,

---

[1] Brentlinger does not raise any assignments of error on appeal regarding the dismissal of her disability discrimination claim. Therefore, we will not address the trial court's denial of Brentlinger's disability discrimination claim in this Opinion.

p. 9, 12.

**{¶ 9}** Brentlinger filed a timely notice of appeal from the trial court's grant of summary judgment to Winsupply.

II.    The Trial Court Did Not Err In Granting Winsupply's Motion for Summary Judgment

**{¶ 10}** Brentlinger's sole assignment of error states:

THE TRIAL COURT ERRED WHEN IT RULED THAT APPELLANT COULD

NOT ASSERT A FMLA INTERFERENCE CLAIM.

**{¶ 11}** Pursuant to Civ.R. 56, summary judgment is proper where: (1) a case presents no genuine dispute as to any material fact; (2) the moving party is entitled to judgment as a matter of law; and (3) construing the evidence most strongly in favor of the non-moving party, reasonable minds can reach only one conclusion, which is adverse to the non-moving party. *Harless v. Willis Day Warehousing Co.*, 54 Ohio St.2d 64, 66, 375 N.E.2d 46 (1978). The substantive law of the claim or claims being litigated determines whether a fact is "material." *Herres v. Millwood Homeowners Assn., Inc.*, 2d Dist. Montgomery No. 23552, 2010-Ohio-3533, ¶ 21, citing *Hoyt, Inc. v. Gordon & Assocs., Inc.*, 104 Ohio App.3d 598, 603, 662 N.E.2d 1088 (8th Dist.1995).

**{¶ 12}** Initially, the movant bears the burden of establishing the absence of any genuine issue of material fact. *Mitseff v. Wheeler*, 38 Ohio St.3d 112, 115, 526 N.E.2d 798 (1988). The movant may rely on evidence of the kinds listed in Civ.R. 56(C) for this purpose. *Dalzell v. Rudy Mosketti, L.L.C.*, 2d Dist. Clark No. 2015-CA-93, 2016-Ohio-

3197, ¶ 5, citing *Dresher v. Burt*, 75 Ohio St.3d 280, 292-293, 662 N.E.2d 264 (1996). If the movant meets its burden, then the non-moving party bears a reciprocal burden to establish, as set forth in Civ.R. 56(E), that the case presents one or more genuine issues of material fact to be tried. *Id.* at ¶ 6. Like the movant, the non-moving party may not rely merely upon the allegations or denials offered in the pleadings but must be able to present evidentiary materials of the types listed in Civ.R. 56(C). *Dresher* at 293. On appeal, a trial court's ruling on a motion for summary judgment is reviewed de novo. *Dalzell* at ¶ 6, citing *Schroeder v. Henness*, 2d Dist. Miami No. 2012-CA-18, 2013-Ohio-2767, ¶ 42.

{¶ 13} The FMLA entitles an eligible employee to 12 work weeks of unpaid leave during any 12-month period for a serious health condition that causes the employee to be unable to perform her job responsibilities and functions. 29 U.S.C. 2612(a)(1)(D). The FMLA prohibits an employer from interfering with, restraining, or denying an employee's exercise of the employee's rights under the act. 29 U.S.C. 2615(a)(1).

{¶ 14} To prevail on an FMLA interference claim, a plaintiff must establish that (1) she is an eligible employee; (2) the defendant is an employer; (3) the employee was entitled to leave under the FMLA; (4) the employee gave the employer notice of her intention to take leave; and (5) the employer denied the employee FMLA benefits to which she was entitled. *Cavin v. Honda of Am. Mfg., Inc.*, 346 F.3d 713, 719 (6th Cir.2003). The trial court based its summary judgment decision on Brentlinger's failure to establish a genuine issue of material fact as to whether she was entitled to leave under the FMLA.

{¶ 15} In order to be entitled to benefits under the FMLA, a plaintiff must establish

"the objective existence of a serious health condition." *Jarvis v. Gerstenslager Co.*, 9th Dist. Wayne Nos. 02CA47, 02CA48, 2003-Ohio-3165, citing *Bauer v. Varity Dayton-Walther Corp.*, 118 F.3d 1109 (6th Cir.1997). A "serious health condition" is defined as "an illness, injury, impairment, or physical or mental condition that involves" either inpatient care in a medical care facility or "continuing treatment by a health care provider." 29 U.S.C. 2611(11). Pursuant to 29 C.F.R. 825.115, a serious health condition involving continuing treatment by a health care provider includes one or more of the following:

(a) Incapacity and treatment. A period of incapacity of more than three consecutive, full calendar days, and any subsequent treatment or period of incapacity relating to the same condition * * *:

* * *

(c) Chronic conditions. Any period of incapacity or treatment for such incapacity due to a chronic serious health condition. A chronic serious health condition is one which:

(1) Requires periodic visits (defined as at least twice a year) for treatment by a health care provider, or by a nurse under direct supervision of a health care provider;

(2) Continues over an extended period of time (including recurring episodes of a single underlying condition); and

(3) May cause episodic rather than a continuing period of incapacity (e.g., asthma, diabetes, epilepsy, etc.).

* * *

**{¶ 16}** The trial court found that Brentlinger had failed to create a genuine issue of material fact that she was incapacitated within the meaning of the FMLA due to a chronic serious health condition. "The term incapacity means inability to work, attend school or perform other regular daily activities due to the serious health condition, treatment therefore, or recovery therefrom." 29 C.F.R. 825.113(b). In its September 23, 2021 Order (p. 8-9), the trial court stated, in part:

Brentlinger claims to have Crohn's disease and in her deposition testimony she states that she also has fibromyalgia, a pseudotumor, alcoholism, and depression. The existence of her medical conditions are not in dispute. The issue is whether Brentlinger was incapacitated within the meaning of the statute due to a chronic serious health condition. Brentlinger has provided no evidence other than her own testimony to show she was incapacitated. She has not provided any affidavits or testimony from medical professionals regarding her conditions and whether her conditions required her to miss work. She never even asked her physician for a statement regarding her need to miss work. She has not produced an expert report or deposed any experts regarding her conditions and the need for time off from work. Additionally, she testified that she was able to work through her Crohn's flare-ups. Brentlinger cannot rely solely on her unsupported testimony to establish the fact she was incapacitated. To prevail on a claim of FMLA interference, she must show that she was incapacitated due to a chronic serious health condition and she cannot do

so.

{¶ 17} Brentlinger concedes in her appellate brief that she "needed to provide proof of a healthcare provider that her Crohn's disease was a serious health condition that required periodic visits with a medical provider." Brentlinger Appellate Brief, p. 8. She did not do so. But she contends that "[a]ll of this information would have been included and provided by her physician on the FMLA certification paperwork she repeatedly sought from" Bosron. *Id.* at 8-9. In short, Brentlinger argues that Winsupply's failure to provide FMLA paperwork to her prevented her from getting the necessary information from her medical provider to establish her entitlement under the FMLA. Winsupply responds that the trial court's judgment was correct because Brentlinger "has produced no medical records, medical certification, expert or expert report or affidavit showing that she was suffering from a serious medical condition or unable to work." Winsupply Appellate Brief, p. 9.

{¶ 18} Typically, " 'a plaintiff's own testimony, *standing alone*, is insufficient to prove incapacity under the FMLA, and * * * a plaintiff's own assertions regarding the severity of her medical condition are insufficient to establish a serious health condition.' " (Emphasis sic.) *Barger v. Jackson, Tennessee Hosp. Co., LLC*, 92 F.Supp.3d 754, 764-65 (W.D. Tenn.2015), quoting *Hyldahl v. Michigan Bell Tel. Co.*, 503 Fed.Appx. 432, 439 (6th Cir.2012). *See also Reinwald v. Huntington Natl. Bank*, 684 F.Supp.2d 975, 982 (S.D. Ohio 2010) (holding that competent medical evidence would be required to establish that the pain plaintiff suffered as a result of the Lupron injection was sufficiently severe to render her unable to work). Further, " '[t]he possibility that a person can work removes

FMLA protection.' " *Jarvis*, 9th Dist. Wayne Nos. 02CA47, 02CA48, 2003-Ohio-3165, at ¶ 24, quoting *Cole v. Sisters of Charity of the Incarnate Word*, 79 F.Supp.2d 668, 672 (E.D.Texas1999). And whether an employee can perform other regular daily activities may be relevant to a determination of whether she is incapacitated. *Id.* at ¶ 24.

**{¶ 19}** Brentlinger testified that she never missed more than three consecutive days from work. Brentlinger Deposition, p. 62-63. Further, she admitted that she had not been receiving any medical treatment for Crohn's disease since her last doctor's appointment in 2019, and that she had never pursued the Humira treatment beyond one injection. *Id.* at 112-113, 125, 132. Brentlinger stated that the worst of the flare-ups of her Crohn's disease had happened in the beginning of 2019. *Id.* at 113. But she conceded that she never missed more than two consecutive days of work due to a flare-up and that she typically had been able to work while having a flare-up. *Id.* at 158-59. Brentlinger did testify that Dr. Barde told her prior to her scheduled June 10, 2019 appointment that he would fill out the FMLA forms. *Id.* at 80. However, she never submitted anything to the trial court from Dr. Barde stating that she suffered from a serious medical condition or was incapacitated from working due to that condition.

**{¶ 20}** Based on a review of the record before us, we believe the trial court correctly found that Winsupply met its initial burden to show that there was an absence of a genuine issue of material fact regarding whether Brentlinger was entitled to FMLA leave and that Brentlinger failed to come forth with the necessary medical evidence to satisfy her reciprocal burden on summary judgment. Consequently, Brentlinger's sole assignment of error is overruled.

III.    Conclusion

**{¶ 21}** Brentlinger's assignment of error having been overruled, the judgment of the trial court is affirmed.

. . . . . . . . . . . . .

DONOVAN, J. and EPLEY, J., concur.

Copies sent to:

David M. Duwel
Mary E. Lentz
Martin A. Foos
Hon. Susan D. Solle